UNITED STATES of America, Plaintiff,

v.

Diaz D. McELVEEN, E. Ray McElveen, Saxon Farmer and Eugene Farmer, Individually and as members of the Citizens Council of Washington Parish, Louisiana, Curtis M. Thomas, Registrar of Voters of Washington Parish, Louisiana, and the Citizens Council of Washington Parish, Louisiana, Defendants.

Civ. A. No. 9146.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 11, 1960.

Joseph M. F. Ryan, Jr., Acting Asst. Atty. Gen., M. Hepburn Many, U. S. Atty., New Orleans, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, M. E. Culligan, John E. Jackson, Weldon A. Cousins, Wm. P. Schuler, Henry J. Roberts, Jr., Asst. Attys. Gen. of Louisiana, for defendant.

France Watts, Jr., Franklinton, La., for Curtis M. Thomas.

Benjamin C. Toledano, New Orleans, La., Meadors, Shaw & Meadors, Homer, La., for Citizens Council of Washington Parish, La.

J. SKELLY WRIGHT, District Judge.

In the spring of 1959 the Citizens Council, professing a purpose to purge the registration rolls of Washington Parish, Louisiana, of all persons illegally registered, succeeded in disenfranchising 85% of the Negro voters of the Parish and 0.07% of the white. The United States in this action charges that this profession of high purpose was a fraud designed to deny Negro citizens the right to vote. Made defendants and charged with conspiring with the Citizens' Council are several members of the Council and the Registrar of Voters for Washington Parish.

In a prior action this court denied the defendants' motion to dismiss. United States v. McElveen, D.C., 177 F.Supp. 355. Here the United States has moved for a temporary injunction. Based on the evidence offered by all parties in connection with this motion, this Court now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Individual defendants Diaz D. McElveen, E. Ray McElveen, Saxon Farmer,

and Eugene Farmer are, and at all times material hereto were, registered voters of Washington Parish, Louisiana, and during the period from November 1, 1958 through July 1, 1959 were members of the defendant Citizens Council.

2. Defendant Registrar Curtis M. Thomas is, and has been since September 1949, the Registrar of Voters of Washington Parish, Louisiana, with his office in Franklinton, Louisiana.

3. Defendant Citizens Council of Washington Parish, Louisiana, is and at all times material hereto was, a nonprofit corporation incorporated under the laws of the State of Louisiana and domiciled in Washington Parish Louisiana. One of its purposes is to maintain racial segregation in said parish.

4. Registration is a prerequisite under state law to voting in any election in the State of Louisiana, and may be either permanent or periodic. Washington Parish, Louisiana became a permanent registration parish in May of 1958 and a registered voter of this parish is not required to re-register unless his name is cancelled from the registration rolls in accordance with law.

5. The defendant Registrar in his official capacity as Registrar of Washington Parish was and is responsible, among other things, for registering of qualified applicants for registration, for keeping and preserving of registration records, and for cancelling from the registration rolls the names of all voters who lose their right to remain on the rolls.

6. Each registered voter of Washington Parish has a registration card, Form of Application for Registration, which, except in the cases of illiterates and the physically disabled, is entirely filled out by the registrant and sworn to before the defendant Registrar. The registration cards of current registrants are maintained in the office of the Registrar of Voters, and are filed in alphabetical order by precincts within the nine wards that comprise Washington Parish.

7. Acting under the authority of the laws of Louisiana, and more particularly Section 245, Title 18 LSA–Revised Statutes of 1950, the Individual Defendants, commencing in February 1959 and ending in June 1959, filed in the office of the defendant Registrar affidavits challenging the right of approximately 1,377 Negroes and approximately 10 white persons to remain on the registration rolls as qualified voters.

8. In filing the aforesaid challenges the individual defendants used the facilities of the office of the defendant Registrar, the official records kept therein, and the Forms of Affidavit of Challenge provided for by the laws of Louisiana.

9. The defendant Registrar, acting under the authority of Title 18 Section 245 of the LSA–Revised Statutes of 1950, issued and caused to be issued to the persons challenged, Citations of Notice to Erase requiring them to appear at the office of the defendant Registrar and prove by written affidavit of three bona fide registered voters their right to remain on the registration rolls.

10. Following and as a result of the challenges made by the individual defendants, the names of the persons challenged were removed from the registration rolls of Washington Parish. The number so removed was approximately 98% of the total that was removed from the rolls of Washington Parish during the period November 1, 1958 through July 1, 1959.

11. On November 30, 1958 there were 11,444 white persons and 1,517 Negroes registered to vote in Washington Parish, Louisiana. On June 30, 1959 there were 12,228 white persons and 236 Negroes registered to vote there. The decline in the number of registered Negro voters in Washington Parish between the dates November 4, 1958 and June 16, 1959 was a direct result of the filing in the office of the Registrar of Affidavits of Challenge by the individual defendants.

12. The Affidavits of Challenge filed by the individual defendants purported to be based on defects or deficiencies in the registration cards such as misspellings, deviations from printed instruc-

tions, failure to compute age with exact precision, and illegible handwriting.

13. The same defects and deficiencies are to be found in at least half of the registration cards of the white citizens of Washington Parish currently on the registration rolls. Analysis of a random sampling of 200 cards, 198 of which were of white persons, revealed that over 60% had such defects and inconsistencies, and the defendant Registrar, who has worked with all registration cards since 1949, testified that at least 50% had such errors and omissions.

14. In examining the Washington Parish registration records for the purpose of filing the said Affidavits of Challenge, the individual defendants limited their examination almost exclusively to the registration records of Negro voters while making only a token examination of the registration records of white voters. The individual defendants made no examination of the registration records pertaining to those wards in which no Negroes were registered and they challenged no voters in those wards.

15. The acts and practices of the individual defendants, as described, were committed and engaged in for the purpose and with the effect of depriving Negroes, solely because of their race or color, of the right to register and vote.

16. Based upon his knowledge that (a) the individual defendants virtually confined their examination of the registration records to those of Negro voters, (b) the challenges were directed almost entirely to Negroes and not white persons, and (c) the individual defendants filed Affidavits of Challenge involving defects and deficiencies which he knew also appeared in the records of white persons, against whom Affidavits of Challenge were not filed, the defendant Registrar was well aware of the racially discriminatory character of the challenges of the individual defendants.

17. Defendant Citizens Council at all times pertinent to this action approved and endorsed the aforesaid acts and prac-

tices of the individual defendants, all of whom were members of the defendant Citizens Council.

18. But for the acts and practices of the individual defendants in filing the Affidavits of Challenge as described and the action of the defendant Registrar in giving effect to such challenges, the approximately 1377 Negroes previously registered to vote and removed from the registration rolls would be presently registered to vote.

19. Unless restored to the registration rolls of Washington Parish the approximately 1,377 Negroes previously registered to vote will be unable to vote in the General Election to be held April 19, 1960.

### Conclusions of Law

1. This court has jurisdiction of this action. 28 U.S.C. § 1345; 42 U.S.C.A. § 1971(d).

2. The individual defendants, in challenging the registration status of voters, were acting under color of the laws of Louisiana. Providing for and supervising the electoral process is a state function. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152. The individual defendants participated in this state function under express authority of Louisiana law, using state facilities made available to them. LSA–R.S. 18:245. Their actions formed the basis of the removal of citizens from the registration rolls by the defendant Registrar acting in his official capacity. See Shelley v Kraemer, 334 U.S. 1, 20, 68 S.Ct. 836, 92 L.Ed. 1161.

3. The challenges by the individual defendants, endorsed and supported by the defendant Citizens Council of Washington Parish, of which they were and are members, although not patently discriminatory on the face of each, were actually massively discriminatory in purpose and effect, and as such unconstitutional. U. S. Constitution, 15th Amend.; 42 U.S.C.A. § 1971(a). The result of the challenges was to remove almost all of the Negro voters from the rolls and leave the white voters practically un-

touched, even though over 50% of the white registration cards have the same defects and deficiencies as did the challenged Negro cards. A court need not, and should not, shut its mind to what all others can see and understand. Child Labor Tax Case, 259 U.S. 20, 37, 42 S.Ct. 449, 66 L.Ed. 817. Discriminatory application of a statute, even one unobjectionable on its face, is unconstitutional. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

■ 4. The action of the defendant Registrar in giving effect to the mass challenges of the individual defendants achieved a discriminatory result in violation of his duties under the 15th Amendment. Whether or not he had the racially discriminatory purpose which motivated the action of the individual defendants and the defendant Citizens Council is irrelevant as a matter of law. Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244.

■ 5. The challenges, having been made in violation of the 15th Amendment and 42 U.S.C.A. § 1971(a), were and are themselves null, void and ineffective for any purpose, and the voters taken off the registration rolls as a result of these challenges were accordingly illegally removed. Thornton v. Martin, 1 Race Relations Law Reporter 213 (1956). It is of no bearing that some or all of the defects and deficiencies set out as basis for the challenges may in fact exist, and if nondiscriminatorily cited, could constitute legal grounds for removal of voters from the rolls as indicated in Thomas v. McElveen et al., Civil Docket No. 18,751 22nd Judicial District Court, Parish of Washington, Louisiana. This is not a matter of a failure or inability to show a common injury. Compare Reddix v. Lucky, 5 Cir., 252 F.2d 930. Here the common injury, which is the fatal defect of each challenge, is a shared discrimination in the application of the law.

Frasier v. Board of Trustees, D.C., 134 F.Supp. 589, affirmed per curiam 350 U.S. 979, 76 S.Ct. 467, 100 L.Ed. 848.

6. Plaintiff, the United States of America, has an interest and obligation broader than that of any other individual litigant, which should be taken into account in giving effect to the broad remedial purposes of the Civil Rights Act of 1957. This is not a case as between private parties and should not be so construed. State of Georgia v. Tennessee Copper Co., 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038. Courts of equity may, and frequently do, go much further both to give and to withhold relief in furtherance of the public interest than they are accustomed to go where only private interests are concerned. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789.

■ 7. The principle of the exhaustion of administrative remedies has no application to this case, since the qualifications of the persons challenged are not here at issue. The discrimination involved lies in part in the very act of subjecting the Negroes to the process of resorting to administrative remedies which are not required of white voters similarly situated. To require exhaustion of administrative remedies would make this court a party to the discrimination claimed. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. In any event, the law itself expressly dispenses with the requirement of the exhaustion of administrative remedies. 42 U.S.C.A. § 1971(d). And where a person "has been illegally removed from the voters' list his remedy lies in having the illegal action rescinded, not in re-registering." Reddix v. Lucky, 5 Cir., 252 F.2d 930, 937, 938.

8. This court has jurisdiction to issue an appropriate injunction in this case. 42 U.S.C.A. § 1971(c).

Judgment for plaintiff.