**UNITED STATES of America, Plaintiff,**

v.

**James Griggs RAINES, Dixon Oxford, Roscoe Radford, Registrars of Terrell County, Georgia, F. Lawson Cook, Sr. and Mrs. F. Lawson Cook, Sr., Deputy Registrars, Defendants.**

Civ. A. No. 442.

United States District Court
M. D. Georgia,
Americus Division.

Sept. 13, 1960.

Frank O. Evans, U. S. Atty., Macon, Ga., St. John Barrett, Ben Brooks, Dept. of Justice, Washington, D. C., for plaintiff.

Charles J. Bloch, Ellsworth Hall, Jr., Macon, Ga., Peter Zach Geer, Colquitt, Ga., Robert L. Russell, Jr., Winder, Ga., for defendants.

BOOTLE, District Judge.

This action was filed September 4, 1958 by the Attorney General for the United States under the Civil Rights Act of 1957 (42 U.S.C.A. § 1971(c)) to obtain preventive relief against alleged acts and practices of the defendants which would deprive other persons of rights and privileges secured by subsection (a) of 42 U.S.C.A. § 1971, namely, the right and privilege of citizens of the United States who are otherwise qualified by law to vote at any election by the people in the State of Georgia, to be entitled and allowed to vote at all such elections without distinction of race or color.

The case was tried to the court without a jury, and evidence was heard for five days, June 27–July 1, 1960. Then counsel, at their request, were allowed until August 29, 1960 for the submission of briefs and reply briefs. Such briefs having been submitted and considered carefully by the court, along with all of the evidence presented at the trial, the court makes the following findings of fact and conclusions of law.

## Findings of Fact

**1.**

Under the provisions of the Constitution of the State of Georgia, all citizens of the State qualified as to age and residence and not laboring under any of the disabilities named in said Constitution are entitled to register as electors and to vote in all elections in the State if they come within either of the two classes therein provided for, namely (1) all persons who are of good character and understand the duties and obligations of citizenship under a republican form of government; or (2) all persons who can pass a literacy test, that is to say, who can correctly read in the English language any paragraph of the Constitution of the United States or of the State of Georgia and correctly write the same in the English language when read to them by any one of the registrars.

**2.**

Under the provisions of the statutes of the State of Georgia registration is a prerequisite to voting in any election by the people in the State. The statutes pertaining to registration require as a prerequisite to registration to vote that if an applicant applies for registration he shall pass a literacy test if he seeks to qualify on the basis of literacy, or an examination based upon certain standard questions if he seeks to qualify on the basis of his good character and his understanding of the duties and obligations of citizenship under a republican form of government.

**3.**

The statutes of Georgia provide for the appointment of a three-member Board of Registrars in each county of the State. The Board is required to pass upon all applications for voter registration in the county and to prepare and certify lists of qualified voters for each election held in the county. The statutes of Georgia further provide that the Tax Commissioner or Tax Collector of the county shall be a deputy to the Board of Registrars. Persons desiring to register

may apply to the deputy registrar who is authorized by law to accept applications and to administer the necessary oath. Under Georgia law, applications for registration must be turned over to the Board of Registrars and examined by them within 10 days from the date of application. If it appears from the application that the applicant is otherwise qualified, he must be sent notice within 5 days to appear before the Board for examination.

4.

Under the Voters' Registration Act of 1949, Laws 1949, p. 1204, which was a part of the law of Georgia prior to 1956 and until March 25, 1958, the deputy registrar of voters was authorized and required to administer to each applicant who elected to qualify as a voter on the basis of literacy a test of reading and writing a section of the Constitution of the State of Georgia or of the United States. Under the Voters' Registration Act of 1949 an applicant who elected to qualify on the basis of good character and an understanding of the duties and obligations of citizenship under a republican form of government was required to take a question-and-answer test consisting of 30 standard questions administered by the Board of Registrars. An applicant could qualify under the question-and-answer test if he correctly answered 10 of the 30 questions set forth in the statute.

5.

Under the Georgia Voters' Registration Act of 1958, Code, § 34-101 et seq., which became effective on March 25, 1958, applicants who elect to qualify for voter registration on the basis of literacy must demonstrate to the Board of Registrars (as distinguished from the deputy registrar as required under the 1949 Act) their ability to read and write any section of the Constitution of the State of Georgia or of the United States. For applicants who do not elect to qualify on the basis of literacy, the 1958 Act contains a more difficult and stringent question-and-answer test than was provided for under the previous law, although applicants are not required to take it. Any applicant may elect to take the literacy test. The question-and-answer test contains a list of 30 questions, each more difficult than those provided for by the prior law, 20 of which must be correctly answered. Unlike the 1949 Act, the 1958 Act does not set forth the answers to the questions, although contemporaneously with the effective date of the Act, the Attorney General of Georgia prepared and mailed out to registrars answers to the questions. Also, answers were published in the Atlanta newspapers, and booklets giving the answers were distributed among the voters, particularly Negro voters, and classes were held in which they were instructed as to the answers.

6.

The current provision of said registration statutes applicable to the administration of the literacy test is Section 17(a) of the Georgia Voters' Registration Act of 1958, approved March 25, 1958, the pertinent part of which reads as follows:

"(a) If the applicant applies for registration and seeks to qualify on the basis of literacy, the board shall submit to him a section of the Constitution of Georgia or of the United States and the applicant shall be required to read it aloud and write it in the English language. If the applicant reads the section intelligibly and writes it legibly, possesses the other necessary qualifications and is not disqualified for any reason, the card shall be marked approved and the applicant shall be considered a registered voter. Otherwise, the registration card shall be marked rejected."

7.

During a period commencing prior to 1956 and continuing to the date of his death on November 26, 1958, F. Lawson Cook, Sr., was Tax Commissioner and ex-officio deputy registrar of voters of Terrell County, Georgia. During the

period that F. Lawson Cook, Sr. held the office of deputy registrar of voters he was assisted in the performance of the duties of that office by his wife, Mrs. F. Lawson Cook, Sr.

8.

Mrs. F. Lawson Cook, Sr. is and has been since January, 1959, Tax Commissioner and ex-officio deputy registrar of Terrell County.

9.

Dixon Oxford is, and has been since prior to 1956, a member of the Board of Registrars of Terrell County.

10.

James Griggs Raines is, and has been since March 17, 1958, a member of the Board of Registrars of Terrell County. He received his official appointment as Chief Registrar in June, 1958, and has acted as Chief Registrar and Chairman of the Board of Registrars since March 17, 1958.

11.

Roscoe Radford was, from March 17, 1958 until December 19, 1959, a member of the Board of Registrars of Terrell County.

12.

William Smith was, from December 19, 1959 until February 18, 1960, a member of the Board of Registrars of Terrell County.

13.

The Negro citizens registered to vote in Terrell County on or about April 16, 1958 numbered 48, while the white citizens registered to vote numbered 2,810. On or about February 9, 1960, there were approximately 3,000 registered white voters and 53 registered Negro voters.

Since July 7, 1956 and up to the commencement of the trial, June 27, 1960, forty-one different Negro citizens of Terrell County have attempted to register for the purpose of voting. Of that number, only six had been registered as of the date of the trial: Plennie Slade, Lilla V. Knighton, and Janie Breedlove, by passing the literacy test, all since April 7, 1958; Bertha Mae Hall and Alford C. McKenzie, by passing the question-and-answer test, both since April 7, 1958; and Rubin Moman, evidently by inadvertence sometime prior to February 9, 1960.

Twelve Negro citizens of Terrell County applied for registration as voters between September 4, 1958, the date of the filing of the suit, and June 27, 1960, the date of the commencement of the trial. Of this number, four were registered, and they are included in the list of six above.

Seventeen Negro citizens of Terrell County applied for registration as voters between March 17, 1958, the date of defendant Raines' appointment, and June 27, 1960, the date of the commencement of the suit. Of this number, five have been registered, and they are included in the list of six above.

14.

The Board of Registrars of Terrell County and the deputy registrar of Terrell County maintain, and have maintained since prior to 1956, separate records of white and Negro applicants for registration. The Board and the deputy registrar have used and are still using green application forms for Negro applicants and white application forms for white applicants. The certified lists of qualified voters prepared by the Board of Registrars and by the deputy registrar list separately qualified voters of the white race and qualified voters of the Negro race and designate said voters according to their race. Although defendants did not initiate these practices, they have continued them and were still continuing them at the time of the trial.

The 1958 Georgia Voters' Registration Act provides that the application card to be filled out by the applicant shall state his race.

15.

Between July 7, 1956 and March 31, 1958, the following Negro citizens ap-

**126**

plied to the deputy registrar of voters of Terrell County to be registered to vote:

| Date | Name |
|------|------|
| 7/7/56 | Robert Lee Cross |
| 10/22/56 | Johnnie Shorter |
| 10/23/56 | Mose Turner |
| 10/23/56 | Reana Burks |
| 10/27/56 | Bertha Mae Hall |
| 11/3/56 and | |
| 11/19/57 | Marjorie Moore Turner |
| 11/3/56 | Annie Lee Chambers |
| 11/3/56 | Grace Boyd Gibson |
| 11/5/56 | Darling Ulysses Pullum, Jr. |
| 11/7/56 | Simmie Albriten |
| 11/9/56 | Tyree King |
| 11/11/56 | Lucius Holloway |
| 11/28/56 | James Crawford |
| 12/7/56 | Alice Bynum |
| 12/8/56 | James Henry Reynolds |
| ?/21/57 | M. J. Hall |
| ?/22/57 | Candus Page |
| 1/25/57 | Clarence Thrower |
| 3/8/57 | S. H. Polk |
| 3/22/57 | Alford C. McKenzie |
| 5/25/57 | Rubin Moman |
| 10/17/57 | Jessie J. Walker |
| 11/19/57 | Edna Mae Lowe |
| 11/29/57 and | |
| 1/16/56 | Janie Breedlove |
| 12/3/57 | Eddie G. Lowe |
| 12/3/57 | Riley Dawson |
| 1/10/58 | Davey L. Gibson |
| 1/27/58 | Mary Louise Holloway |
| 2/12/58 | Genevieve M. Shedrick |

16.

Some of the above applications were taken by F. Lawson Cook, Sr., and the remainder were taken by Mrs. F. Lawson Cook, Sr. for her husband. None of these applications was acted upon by F. Lawson Cook, Sr. or by Mrs. F. Lawson Cook, Sr., and none of the names of the applicants was added by either of them to the list of qualified voters for Terrell County, except possibly Rubin Moman. His application is the only one of a Negro citizen which is on a white card, and his name appears on the 1960 registration list of Terrell County voters, although his card does not indicate that any action was taken by the Board. All of the other applications remained in the files of the deputy registrar, unacted upon, until April 7, 1958, at which time they were acted upon by the Board of Registrars of Terrell County, as is hereinafter more fully set forth.

17.

During the period from July 7, 1956 to March 31, 1958—the same period during which the deputy registrar of Terrell County received registration applications from Negro citizens as set forth in finding No. 15 above—the deputy registrar also received registration applications from several white applicants which were processed by the deputy registrar and whose names were added to the list of qualified voters of Terrell County without any action being taken by the Board of Registrars and without requiring the white applicants to appear before the Board of Registrars.

18.

No evidence has been adduced of any lawful reason for the deputy registrar's withholding action on the applications of Negro applicants filed between July 7, 1956 and March 31, 1958, while favorably acting upon the applications of white applicants in the same period. It is the finding of the court that this distinction in processing applications of whites and Negroes was based upon the race and color of the respective applicants.

19.

Between July 7, 1956 and October 17, 1957, inclusive, 22 Negro citizens of Terrell County applied to the deputy registrar to be registered to vote as described in finding No. 15 above. All of their applications, with the possible exception of the application of Rubin Moman, remained in the files of the deputy registrar, unacted upon, until April 7, 1958, at which time they were acted upon by the Board of Registrars of Terrell County, as is hereinafter more fully set forth. No test of any kind was administered to these Negro applicants at the time of their applications.

**20.**

During the same period a number of white citizens of Terrell County applied to the deputy registrar to be registered to vote. All or practically all of their applications were processed by the deputy registrar, and their names were added to the list of qualified voters of Terrell County without any action being taken by the Board of Registrars and without requiring the white applicants to appear before the Board of Registrars. These white applicants were either given no test or were given only a test of writing a portion of the Constitution of the State of Georgia or of the United States by copying said portion from a book.

**21.**

No evidence has been adduced of any lawful reason for the deputy registrar's withholding action on the applications of these Negro applicants filed between July 7, 1956 and October 17, 1957, inclusive, while favorably acting upon the applications of white applicants filed during the same period. It is the finding of the court that this distinction in processing applications of whites and Negroes was based upon the race and color of the respective applicants.

**22.**

Negro applicants who applied after October 17, 1957 but before April 1, 1958, (namely Edna Mae Lowe, Janie Breedlove, Marjorie Moore Turner, Eddie G. Lowe, Riley Dawson, Davey L. Gibson, Mary Louise Holloway, and Genevieve M. Shedrick), with the possible exception of Genevieve M. Shedrick, were required by the deputy registrar to read aloud and/or to write from dictation a portion of either the Constitution of the United States or of the State of Georgia. White applicants who applied during this same period were, generally and as a rule, permitted by the deputy registrar to write a portion of the Constitution of the State of Georgia by copying said portion from a book and, generally and as a rule, were not required by the deputy registrar to either read aloud or to write from dictation. This distinction in the manner of administering the literacy test to whites and Negroes resulted in Negro applicants being required to take a more difficult and stringent test than white applicants.

**23.**

During the period from December 10, 1957 through March 31, 1958, a total of 69 white persons applied for voter registration in Terrell County. All or practically all of these white applicants were registered and their names added to the list of qualified voters by the deputy registrar and by the Board of Registrars of Terrell County without their being required to appear before the Board of Registrars for examination nor being required to take any examination other than writing by copying a portion of the Constitution of Georgia as described in finding No. 22 above. Negro applicants who applied for registration during this same period did not have their applications acted upon in the same manner as were applications of white persons but, instead, were sent notice to appear on April 7, 1958, before the Board of Registrars for examination regarding their qualifications. No lawful reason appears from the evidence for this distinction in the handling of applications of white and Negro applicants, and it is the finding of the court that this distinction was based upon race and color.

**24.**

If the applications of Negro applicants filed during the period from July 7, 1956 to March 31, 1958, as tabulated in finding No. 15 above, had been processed in the same manner as the applications of the white applicants filed during the same period, the Negro applicants would have been permitted to take the literacy test by copying a section of the Constitution of Georgia or of the United States, and at least the following would have passed the test and would have been registered as qualified voters in Terrell County: Bertha Mae Hall, Marjorie Moore Turner, Grace Boyd Gibson, Edna Mae Lowe, Janie Breedlove, Eddie G. Lowe, Davey L. Gibson, Mary Louise

Holloway, Genevieve M. Shedrick, Jessie J. Walker and Alford C. McKenzie.

25.

Of those eleven Negro applicants named in finding No. 24 who would have been registered as qualified voters in Terrell County had their applications been processed in the same manner as the applications of white applicants filed during the same period, the following information is pertinent:

(a) Three of them—Bertha Mae Hall, Janie Breedlove, and Alford C. McKenzie—are now registered to vote in Terrell County.

(b) Four of them have removed their places of residence from Terrell County (Eddie G. Lowe and Edna Mae Lowe to the State of New York, and Jessie J. Walker and Mary Louise Holloway to Albany, Dougherty County, Georgia).

(c) Two of them—Edna Mae Lowe and Davey L. Gibson—hold master's degrees; five others—Marjorie Moore Turner, Grace Boyd Gibson, Genevieve M. Shedrick, Janie Breedlove and Alford C. McKenzie—hold bachelor's degrees; one other— Eddie G. Lowe—has had one year of college training; one other—Jessie J. Walker—is a high school graduate; one other—Bertha Mae Hall—finished the tenth grade; and the remaining one— Mary Louise Holloway—quit school at the age of 16.

(d) Six of them—Janie Breedlove, Edna Mae Lowe, Grace Boyd Gibson, Davey L. Gibson, Marjorie Moore Turner and Genevieve M. Shedrick—are teachers, and Alford C. McKenzie is a county agent.

26.

When defendant Raines assumed office on March 17, 1958, the files of the Board of Registrars were in confusion, and, after working on them, he found in the pending file some 100 applications, including those listed in finding No. 15. A primary election was set for Terrell County for April 17, 1958, and defendant Raines felt that it was his duty to prepare a voters' list as quickly as possible.

Defendants Oxford and Radford were not of much immediate assistance to Raines, as Oxford was spending most of his time in Atlanta and Radford was operating a filling station business.

Prior to March 25, 1958, defendant Raines approved all pending white applications as to which F. Lawson Cook, Sr. reported to him that the applicant had been given a literacy test.

27.

On April 4, 1958, the Board of Registrars of Terrell County sent to each of the Negro applicants whose names appear in finding No. 15 above, with the possible exception of Rubin Moman, a notice to appear before the Board on April 7, 1958 to be examined regarding his qualifications to register as a voter. Allen Edwards, Jr., who made application for registration on April 2, 1958, received a like notice. Ten of the Negro applicants so notified failed to appear before the Board on April 7, 1958, and their applications were denied for failure to appear. They are: Allen Edwards, Jr., Annie Lee Chambers, Simmie Albriten, James Crawford, Clarence Thrower, Jessie J. Walker, Genevieve M. Shedrick, Reana Burks, Robert Lee Cross, and Mose Turner. Their failure to appear at the time specified constituted cause for their rejection on April 7, 1958.

With respect to these ten applicants named in this finding of fact:

(a) Annie Lee Chambers and Simmie Albriten are now deceased.

(b) Robert Lee Cross had moved to Albany, Dougherty County, Georgia before April 7, 1958.

(c) Jessie J. Walker had likewise moved to Albany before April 7, 1958, and is now registered to vote in Dougherty County, Georgia.

(d) Mose Turner changed his mind about registering to vote before April 7, 1958.

(e) Genevieve M. Shedrick's notice to appear before the Board was misplaced at her home, and she did not see it until after April 7, 1958.

(f) James Crawford and Clarence Thrower were at the Terrell County Courthouse on April 7, 1958, but left before they were called in for examination by the Board of Registrars after discovering that Negro applicants with college degrees had failed the examination.

(g) None of these ten applicants has subsequently filed an application to register to vote in Terrell County.

### 28.

One Negro applicant who received notice to appear before the Board on April 7, 1958—Mary Louise Holloway—did not receive the notice in time to appear before the Board on the appointed day. When she made her application on January 27, 1958, deputy registrar Cook dictated a portion of a Constitution to her to write. Her application card indicates that she read intelligibly (although she testified that she did not read for Mr. Cook) and wrote illegibly. The card contains the following order: "It is ordered that the foregoing applicant be registered ~~be registered~~ as a qualified voter." Her be denied name does not appear on the 1960 list of registered voters in Terrell County, and she is now a resident of Albany, Dougherty County, Georgia.

### 29.

One Negro applicant who received notice to appear before the Board on April 7, 1958—Darling Ulysses Pullum, Jr.—was denied registration because, in the opinion of the registrars, he had been convicted of a crime involving moral turpitude. He appealed to the Superior Court of Terrell County, Georgia, and his appeal remains undisposed of.

### 30.

Eleven of the Negro applicants summoned to appear before the Board of Registrars on April 7, 1958 appeared and elected to qualify as voters on the basis of good character and an understanding of the duties and obligations of citizenship under a republican form of government. Of these eleven applicants, Alford C. McKenzie and probably Alice Bynum elected to take the question-and-answer test because of the fact and after hearing that Negro applicants who were school teachers had been given the literacy test earlier and had failed. The Board of Registrars examined these eleven Negro applicants by asking them the 30 questions set forth in the Georgia Voters' Registration Act of 1958. Each of the eleven Negro applicants was denied registration by the Board for failure to answer correctly 20 of the 30 questions. Of the eleven Negroes so examined and denied registration, Lucius Holloway, Marjorie Moore Turner, James Henry Reynolds, Riley Dawson and Alford C. McKenzie would, if examined by being asked the 30 questions set forth in the 1949 Registration Act, probably have been able to answer correctly ten of the questions and would, accordingly, probably have passed the examination and have been qualified as voters. It is the finding of the court that these eleven Negro applicants were given an examination according to the provisions of the 1958 Registration Act because of their race and color, while white voters who had applied during the same period were examined (albeit on the basis of literacy) according to the provisions of the 1949 Registration Act. Deputy registrar Cook was ex-officio registrar from prior to 1956 until his death on November 26, 1958, and Mrs. Cook assisted him in the performance of his duties during that time. Defendant Oxford has been a member of the Board of Registrars since prior to 1956. Despite the fact that defendant Raines was not appointed until March 17, 1958, no lawful reason appears why these eleven Negro applicants should not have been examined under the 1949 Act, long before the 1958 Act became effective on March 25, 1958.

### 31.

Of the eleven Negro applicants referred to in finding No. 30, seven have apparently not attempted to register since April 7, 1958. Lucius Holloway made another application on February 10, 1959, was given a literacy test on Jan-

uary 26, 1960, and was denied registration. He made another application on January 26, 1960, but at the time of the trial had as yet received no notice to appear for examination by the Board. Alford C. McKenzie was given the question-and-answer test by the Board on August 20, 1958 and was registered after answering 20 of the 28 questions propounded to him. M. J. Hall and James Henry Reynolds have filed subsequent applications for registration but at the time of trial had not been tested again.

### 32.

Of the five Negro applicants referred to in finding No. 30 who, if examined by being asked the 30 questions set forth in the 1949 Registration Act, would probably have been able to answer correctly ten of the questions and would, accordingly, probably have passed the examination and have been qualified as voters, the following information, in addition to that set forth in finding No. 25, is pertinent:

(a) Lucius Holloway is a high school graduate.

(b) James Henry Reynolds finished the fifth grade.

(c) Alford C. McKenzie is the only one of this group who has since been registered.

### 33.

Six of the Negro applicants summoned to appear before the Board of Registrars on April 7, 1958, appeared and elected to qualify as voters on the basis of literacy. As to one of them (Bertha Mae Hall), the evidence does not indicate what portion of the Constitution of Georgia or of the United States she was required by the Board to read. However, each of the other five, namely, Janie Breedlove, Eddie G. Lowe, Edna Mae Lowe, Davey L. Gibson and Grace Boyd Gibson, were required by the Board to read aloud Article 6, Section 2, Paragraph 4 of the Constitution of Georgia. Although each read intelligibly, the Board of Registrars determined that Bertha Mae Hall, Janie Breedlove, Edna Mae Lowe, Davey L. Gibson and Grace

Boyd Gibson had read unintelligibly and denied their applications. After determining that Eddie G. Lowe had read intelligibly, the Board required him to write Article 6, Section 2, Paragraph 8 of the Constitution of Georgia from the dictation of defendant James Griggs Raines. Although the applicant Eddie G. Lowe was both willing and able to write any section of the Constitution of the State of Georgia or of the United States legibly upon dictation at a reasonable speed, defendant Raines dictated at such speed as to make it impossible for Eddie G. Lowe to correctly write all that defendant Raines dictated. Upon the pretended basis of failure of Eddie G. Lowe to write legibly Article 6, Section 2, Paragraph 8 of the Constitution of Georgia, but actually upon his race and color, the Board of Registrars denied his application.

### 34.

It is the finding of the court that the applications of each of the six Negroes who were given the literacy test by the Board on April 7, 1958 were denied because of the applicants' race and color, and that they were qualified by law to register and vote at any election by the people in the State of Georgia, and should have been so registered and permitted to vote. Pertinent information concerning these applicants is set forth in finding No. 25.

### 35.

On April 4, 1958, the Board of Registrars of Terrell County sent notices to six white applicants to appear before the Board on April 7, 1958 for examination regarding their qualifications to register as voters. Each of the six white applicants had applied for registration on April 1 or April 2, 1958. Each of them appeared before the Board of Registrars on April 7, 1958, as required by the notice, and each of them elected to qualify for registration as a voter on the basis of literacy. The Board examined the six white applicants by requiring each to read and write Article 2, Section 4, Paragraph 1 of the Constitution of Georgia.

None of the six white applicants was required to read or write Article 6, Section 2, Paragraph 4 of the Constitution of Georgia, which paragraph is longer and more difficult to read and write than Article 2, Section 4, Paragraph 1.

36.

The evidence discloses no lawful reason for the distinction in the literacy test given white and Negro applicants on April 7, 1958, and it is the finding of the court that the distinction was actually based upon the race and color of the two respective groups of applicants.

37.

In administering tests to applicants on April 7, 1958, the Board of Registrars tested each of the Negro applicants one at a time outside the hearing and presence of the other applicants. The white applicants, while tested separately from the Negro applicants, were tested in a group. Each white applicant read aloud Article 2, Section 4, Paragraph 1 of the Constitution of Georgia in the presence of the other applicants. Thus, each applicant, other than the first to read, had the benefit of hearing the paragraph read aloud by another or other applicants before having to read himself. The writing portion of the literacy test was administered to the white applicants as a group, a member of the Board of Registrars reading aloud as the white applicants wrote what was being dictated. It is the finding of the court that the distinction in procedure of testing whites and Negroes resulted in an easier test for white applicants than for Negroes.

38.

Since April 7, 1958 and continuing to the commencement of the trial of this case on June 27, 1960, the Board of Registrars of Terrell County has followed the practice, in administering the literacy test to white applicants, of requiring the applicant to read and write Article 1, Section 9, Paragraph 5 of the Constitution of the United States, the text of which is as follows:

"*Exportation Duty.* No Tax or Duty shall be laid on Articles exported from any State."

Out of 240 white applicants administered the literacy test since April 7, 1958, it affirmatively appears from the evidence that 227 were tested on this paragraph of the United States Constitution. On the other hand, none of the Negro applicants who have been given a literacy test since April 7, 1958 (four in number, Lucius Holloway, Plennie Slade, Lilla V. Knighton, and Janie Breedlove) have been asked to read Article 1, Section 9, Paragraph 5 of the United States Constitution, but each of them has been required to read and write a longer and more difficult passage of said Constitution or of the Georgia Constitution (Article 6, Section 2, Paragraph 4 of the Georgia Constitution as to Lucius Holloway; Article 2, Section 2, Paragraph 2 of the United States Constitution as to Plennie Slade; Article 2, Section 1, Paragraph 5 of the United States Constitution as to Lilla V. Knighton; and Article 6, Section 2, Paragraph 8 of the Constitution of Georgia as to Janie Breedlove). It is the finding of the court that this distinction in the Board of Registrars' selection of a constitutional paragraph on which to test whites and Negroes has been because of the race and color of the applicants.

39.

Since April 7, 1958 and continuing to the commencement of the trial of this case on June 27, 1960, the Board of Registrars of Terrell County has continued the practice of administering examinations to white applicants in groups and administering such examinations to Negroes singly. It is the finding of the court that this distinction in the manner of administering the examinations has been based and is based on the race and color of the applicants, and that its result is to make the examination more difficult for Negroes than for whites.

40.

Since July 7, 1956 and continuing to the commencement of the trial of this

case on June 27, 1960, the members of the Board of Registrars, in administering the literacy test, have imposed lower standards in judging the literacy of white applicants than they have in judging the literacy of Negro applicants. During this period the members of the Board, including its present members, have approved the applications of several white voters whose performance on the literacy test was poorer than the performance of some of the Negro applicants whose applications were denied. There has been no white applicant for registration who is presently unregistered by reason of failure to pass the literacy test.

41.

During the period from July 7, 1956 to the commencement of the trial of this case on June 27, 1960, the members of the Board of Registrars and the deputy registrar of Terrell County have subjected the following Negro citizens of Terrell County, Georgia to distinctions in the registration process on the basis of their race and color and have thereby deprived them of their right to vote at elections in Terrell County without distinction of race or color (these are all of the applicants referred to in finding No. 15 above, with the exception of Moman, plus Slade and Knighton):

| | |
|---|---|
| Robert Lee Cross | M. J. Hall |
| Johnnie Shorter | Candus Page |
| Mose Turner | Clarence Thrower |
| Reana Burks | S. H. Polk |
| Bertha Mae Hall | Alford C. McKenzie |
| Annie Lee Chambers | Jessie J. Walker |
| Grace Boyd Gibson | Edna Mae Lowe |
| Darling Ulysses Pullum, Jr. | Janie Breedlove |
| Simmie Albriten | Eddie G. Lowe |
| Tyree King | Riley Dawson |
| Lucius Holloway | Davey L. Gibson |
| James Crawford | Mary Louise Holloway |
| Marjorie Moore Turner | Genevieve M. Shedrick |
| Alice Bynum | Plennie B. Slade |
| James Henry Reynolds | Lilla V. Knighton |

42.

Beginning July 7, 1956 and continuing to the commencement of the trial of this case on June 27, 1960, the members of the Board of Registrars and the deputy registrar of Terrell County, including the defendants, have engaged in acts and practices which deprive Negro citizens of Terrell County of their right and privilege to be entitled and allowed to vote at all elections in Terrell County without distinction of race or color. These acts and practices include the following:

a. The use of differently colored registration application forms for white and Negro voters;

b. The keeping of separate registration and voting records for whites and Negroes according to race;

c. Delaying action upon applications for registration by Negroes while not delaying such action with respect to applications by whites;

d. In administering literacy tests, requiring Negroes to read and write a more lengthy and difficult paragraph of the Constitution of Georgia or of the United States than whites are required to read and write;

e. In administering literacy tests, requiring Negroes to read

aloud and to write from dictation while not so requiring white applicants, but, instead, requiring white applicants only to write by copying;

f. Administering literacy tests to Negro applicants singly and apart from white applicants while administering such tests to white applicants in groups; and

g. Requiring a higher standard of literacy of Negroes than of white applicants in passing upon the results of the literacy test.

### Conclusions of Law

**1.**

This court has jurisdiction of this action under 42 U.S.C.A. § 1971(d) and under 28 U.S.C.A. § 1345.

**2.**

■ The Attorney General is authorized to institute this action on behalf of the United States pursuant to subsection (c) of 42 U.S.C.A. § 1971 to obtain preventive relief against acts and practices by the defendants which would deprive other persons of rights and privileges secured by subsection (a) of that section.

**3.**

Under the Georgia Registration Law of 1958, the registrars shall, in each year in which there is a general election for members of the General Assembly, cease their operations of taking applications from persons desiring to vote in such election six months before the date of such election. During the period while the general election list is being prepared, they may suspend the operation of taking applications from those desiring to vote in subsequent elections, provided the office shall be kept open at least one day and the same day in each week during this period for receiving applications. Ga.Code Ann. sec. 34–111.

Under the Georgia Registration Law of 1958, the registrars, if present or in session at the time an application is filed, may proceed to the examination of the applicant instanter and without notice. Ga.Code Ann. sec. 34–117(c).

Under the Georgia Registration Law of 1958, all decisions of the registrars are subject to appeal. An appeal must be in writing and shall be filed with the registrars within 10 days from the date of the decision complained of. It shall be returned by the registrars to the office of the clerk of the superior court to be tried as other appeals. Pending the appeal and until final judgment in the case, the decision of the registrars shall remain of full force. Ga.Code Ann. sec. 34–116.

Under Georgia law, an appeal to the superior court is a de novo investigation. It brings up the whole record from the court below, and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case. Ga.Code Ann. sec. 6–501. All appeals to the superior court shall be tried by a jury at the first term after the appeal has been entered, unless good cause shall be shown for continuance. Ga.Code Ann. sec. 6–601.

**4.**

■ Section 1971(a) of Title 42 of the United States Code Annotated forbids any distinction in the voting process based upon race or color, irrespective of whether such distinction involves an actual denial of the vote. See Lane v. Wilson, 1939, 307 U.S. 268, 275–277, 59 S.Ct. 872, 83 L.Ed. 1281, and Sharp v. Lucky, 5 Cir., 1958, 252 F.2d 910, 913.

**5.**

■ The following are, as a matter of law, proscribed distinctions of race and color within the meaning of Section 1971 (a) of Title 42 of the United States Code Annotated:

a. The use of differently colored registration application forms for white and Negro voters;

b. The keeping of separate registration and voting records for whites and Negroes according to race;

c. Delaying action upon applications for registration by Negroes

while not delaying such action with respect to applications by whites;

d. In administering literacy tests, requiring Negroes to read and write a more lengthy and difficult paragraph of the Constitution of Georgia or of the United States than whites are required to read and write;

e. In administering literacy tests, requiring Negroes to read aloud and to write from dictation while not so requiring white applicants, but, instead, requiring white applicants only to write by copying;

f. Administering literacy tests to Negro applicants singly and apart from white applicants while administering such tests to white applicants in groups; and

g. Requiring a higher standard of literacy of Negroes than of white applicants in passing upon the results of the literacy test.

See Avery v. State of Georgia, 1953, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Lane v. Wilson, supra; Sharp v. Lucky, supra.

### 6.

■ Negro citizens of Terrell County, Georgia, are "otherwise qualified by law to vote at any election" within the meaning of 42 U.S.C.A. § 1971(a) if they possess all of the qualifications and none of the disqualifications set out by Georgia law, as those qualifications and disqualifications are applied by the Board of Registrars and the Deputy Registrar of Terrell County to other citizens. See Yick Wo v. Hopkins, 1886, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, 30 L.Ed. 220, 227, 228; Davis v. Schnell, D.C.S.D.Ala.1942, 81 F.Supp. 872, 880–881, affirmed 1949, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093; Mitchell v. Wright, D.C.M.D.Ala.1947, 69 F.Supp. 698, 703; Rice v. Elmore, 4 Cir., 1947, 165 F.2d 387, 391; Brown v. Baskin, D.C.E.D.S.C.1948, 80 F.Supp. 1017, affirmed 4 Cir., 1949, 174 F.2d 391; United States v. McElveen, D.C.E.D.La. 1960. 180 F.Supp. 10, 14, affirmed United States v. Thomas, 1960, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535.

### 7.

The following Negro citizens of Terrell County, Georgia were qualified by law to vote at the time of their respective applications or examinations for registration, as found in finding of fact No. 24:

r Bertha Mae Hall
* Marjorie Moore Turner
* Grace Boyd Gibson
m Edna Mae Lowe
r Janie Breedlove
m Eddie G. Lowe
* Davey L. Gibson
m Mary Louise Holloway
* Genevieve M. Shedrick
m Jessie J. Walker
r Alford C. McKenzie

Of these eleven applicants, the following were qualified by law to vote at the time of their examinations for registration, as additionally found in finding of fact No. 34:

Bertha Mae Hall
Grace Boyd Gibson
Edna Mae Lowe
Janie Breedlove
Eddie G. Lowe
Davey L. Gibson

### 8.

■ The plaintiff here is the United States of America, seeking to give effect to the broad remedial purposes of the Civil Rights Act of 1957. Where a sovereign state or nation is party plaintiff, it is sometimes more certainly entitled to specific relief than a private party might be. State of Georgia v. Tennessee Copper Co., 1907, 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038. Courts of equity frequently go much further both in giving and in withholding relief in furtherance of the public interest than they are accustomed to go where only private interests are involved. Virginian Ry. Co. v. System Federation No. 40, 1937, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; United States v. McElveen, supra.

*The action of defendants in refusing to register those Negro applicants named in conclusion of law No. 7 having been taken in violation of the Fifteenth Amendment to the Constitution of the United States and of 42 U.S.C.A. § 1971 (a), was null, void and ineffective for any purpose, and their names were illegally withheld from the list of qualified voters of Terrell County. Those names before which an asterisk (*) appears are now being illegally withheld, and should be added to the list of qualified voters of Terrell County. [Those applicants before whose names an "r" appears are now registered, and the applicants before whose names an "m" appears have removed their residences from Terrell County.] United States v. McElveen, supra; Reddix v. Lucky, 5 Cir., 1958, 252 F.2d 930, 937–938; Thornton v. Martin, 1 Race Relations Law Reporter, 213 (M.D.Ga.1955).

### 9.

During the period from July 7, 1956 until commencement of the trial of this case on June 27, 1960, the members of the Board of Registrars and the Deputy Registrars of Terrell County, including the defendants, engaged in acts and practices which deprived Negro citizens of Terrell County, Georgia, including those whose names are set forth in conclusion of law No. 7, of the right and privilege secured by subsection (a) of 42 U.S.C.A. § 1971 to be entitled and allowed to vote at elections in Terrell County without any of the distinctions of race or color which are set forth above in conclusion of law No. 5. There are reasonable grounds to believe that the defendants will continue to engage in such acts and practices.

### Decree

Pursuant to the findings of fact and conclusions of law entered this date,

It Is Ordered, Adjudged and Decreed that James Griggs Raines, Dixon Oxford and Mrs. F. Lawson Cook, Sr., together with their deputies, agents, successors in office, and all persons acting in concert with them, are hereby permanently enjoined as follows:

1. From engaging in any acts or practices which involve or result in distinction on the basis of race or color between Negro citizens and other citizens in the voting process and in registration for voting in Terrell County, Georgia, including the following:

(a) The use of differently colored registration application forms for white and Negro voters;

(b) The keeping of separate registration and voting records for whites and Negroes according to race;

(c) Delaying action upon applications for registration by Negroes while not delaying such action with respect to applications by whites;

(d) In administering literacy tests, requiring Negroes to read and write a more lengthy and difficult paragraph of the Constitution of Georgia or of the United States than whites are required to read and write;

(e) In administering literacy tests, requiring Negroes to read aloud and to write from dictation while not so requiring white applicants;

(f) Administering literacy tests to Negro applicants singly and apart from white applicants while administering such tests to white applicants in groups; and

(g) Requiring a higher standard of literacy of Negroes than of white applicants in passing upon the results of the literacy test.

2. From illegally denying to any Negro citizen of Terrell County, Georgia any of his rights under the election laws of the State of Georgia, or under the Constitution or laws of the United States, touching the matter of suffrage by reason of his race or color.

3. From administering qualifying examinations to Negro applicants for registration in Terrell County in any way different from the manner in which those tests are administered to other applicants for registration.

4. From denying registration as a voter to any Negro applicant, otherwise qualified, whose performance in a qualifying examination is equal at least to the performance of other applicants who are adjudged to have passed such a test and are registered as voters.

5. From failing to accord to any Negro citizen of Terrell County, Georgia, in a fair, impartial and non-discriminatory manner, each and every right such citizen has or may have under the election laws, customs, usages and regulations of the State of Georgia and under the Constitution and laws of the United States pertaining to suffrage.

6. From permitting the names of any of the following Negro citizens of Terrell County, Georgia, to remain off the present and current list of qualified voters of Terrell County or from a legal supplement thereto, longer than ten days from the date of this decree:

>Marjorie Moore Turner
>Grace Boyd Gibson
>Davey L. Gibson
>Genevieve M. Shedrick

It is the intent and purpose of the court that the persons enjoined shall do whatever is necessary to be done to enroll, within ten days from the date of this decree, upon the current list of qualified voters of Terrell County, Georgia, and upon all official copies thereof, the names of all of the above four persons. And it is hereby ordered that the defendants, James Griggs Raines, Dixon Oxford and Mrs. F. Lawson Cook, Sr., file with the Clerk of this court within ten days from the date hereof their detailed report in writing of their full compliance with the provisions of this paragraph 6 of this decree.

This court retains jurisdiction of this cause for the purpose of making any and all additional findings and conclusions and of entering any and all additional orders as may become necessary or appropriate for the enforcement, modification or implementation of this decree, or for any other lawful purpose.

## On Motion to Dismiss.

Since the trial of this case, June 27—July 1, 1960, and on August 1, 1960, the defendants filed their motion "for an order or judgment dismissing the complaint and action for failure of the plaintiff to make parties as required by Rule 25 of the Federal Rules of Civil Procedure." This motion has been briefed by both sides and will now be decided.

■ The complaint named as defendants James Griggs Raines, Dixon Oxford and Roscoe Radford, members of the Board of Registrars of Terrell County, Georgia, and F. Lawson Cook, Sr. and Mrs. F. Lawson Cook, Sr., Deputy Registrars. This motion of defendants points out that registrar Radford, after the suit was filed and on December 19, 1959, resigned as registrar, was succeeded immediately by William Smith who served as registrar from December 19, 1959 until his resignation on February 18, 1960, and that registrar Smith's vacancy has never been filled. Defendants argue that since plaintiff, after the resignation of Radford, took no action to substitute Smith (now resigned) as a party defendant this action has abated and should be dismissed. This will hardly do. This third-member vacancy remains unfilled. The Board continues to function as a two-member Board. Rule 25(d), 28 U.S.C.A. refers to "his successor", but here no successor exists.

■ Defendants' motion to dismiss points out further that, though Mrs. Cook was sued on September 4, 1958 as a deputy registrar, she did not legally become such until December 1, 1958 (although the evidence shows that, prior to that time, she helped the deputy registrar, her husband, as a kind of de facto deputy registrar), and insists that she is now a party only in whatever capacity existed prior to her husband's death, he having died on November 26, 1958 and having been succeeded by her as deputy registrar on December 1, 1958. Defendants urge this situation as a basis of their contention that, for failure of the plaintiff to make parties, this action has

abated and should be dismissed. This will not do either. Upon formally being appointed deputy registrar on December 1, 1958, Mrs. Cook specifically fit the description given her in the complaint, and in such capacity, and over a year later, March 16, 1960, filed her answer. She has answered, defended, and testified in the capacity in which she was sued. She has thus met and served the purposes for which Rule 25(d) was adopted.

Accordingly, said motion to dismiss is hereby overruled.