UNITED STATES of America

v.

ASSOCIATION OF CITIZENS COUNCILS OF LOUISIANA, Inc., the Citizens Council of Arcadia, Louisiana, Inc., the Citizens Council of Gibsland, Louisiana, Inc., Jerry Rougon Butler, John Alexander Bridges, Walter Leonard Dance, Forrest Riley McCallister, Joe A. Reeves, Robert Lamar Taylor, Jr., Joe Bryant Williams, R. C. Woodard, Paul Britton Phillips, J. Roy Caskey, and Henry Leon Walker, Individually and as Members of the Citizens Council of Arcadia, Louisiana, Inc., Leon Franklin Kettler, Archer Franklin Merritt, Charles E. Merritt, Melvin Ray Miller, and Hugh Pearson, Individually and as Members of the Citizens Council of Gibsland, Louisiana, Inc., and Pauline A. Culpepper, Registrar of Voters of Bienville Parish, Louisiana.

Civ. A. No. 7881.

United States District Court
W. D. Louisiana,
Shreveport Division.

Aug. 21, 1961.

See also D.C., 187 F.Supp. 846.

Joseph M. F. Ryan, Jr., Acting Asst. Atty. Gen., Harold H. Greene and D. Robert Owen, Attys., U. S. Dept. of Justice, Washington, D. C., T. Fitzhugh Wilson, U. S. Atty. for the Western Dist. of Louisiana, Shreveport, La., for the government.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Thompson L. Clarke, Dist. Atty., Sixth Judicial Dist., St. Joseph, La., Albin P. Lassiter, Dist. Atty., Fourth Judicial Dist., Monroe, La., Fred L. Jackson, Dist. Atty., Second Judicial Dist., Homer, La., for Pauline A. Culpepper, Registrar of Voters of Bienville Parish, Louisiana.

Albert E. Bryson, Shreveport, La., for Association of Citizens Councils of Louisiana, Inc.

J. Roy Caskey, Arcadia, La., for all defendants except Culpepper and the Association of Citizens Councils of Louisiana, Inc.

Turner B. Morgan, Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, La., for Arcadia and Gibsland Citizens Councils, and individual members thereof.

BEN C. DAWKINS, Jr., Chief Judge.

In clear, unmistakable terms, the 15th Amendment to the Constitution of the United States provides as follows:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

"Section 2. The Congress shall have power to enforce this article by appropriate legislation."

Pursuant to the express authority of Section 2, Congress enacted the Civil Rights Acts of 1957 and 1960, 42 U.S. C.A. § 1971 et seq., which empowers the Attorney General (§ 1971(c) to bring an action for injunctive relief in Federal District Courts (§ 1971(d) whenever any person or persons have engaged in any act or practice (§ 1971(c) which deprives any other person, " * * * otherwise qualified to vote" (§ 1971(a) of the right to vote secured by Section 1 of the 15th Amendment.

This action is brought by the Attorney General in the name of the United States against Mrs. Pauline A. Culpepper, Registrar of Voters for Bienville Parish, Louisiana (Registrar); the Association of Citizens Councils of Louisiana, Inc. (Association); the Citizens Council of Arcadia, Louisiana, Inc. (Arcadia Council); the Citizens Council of Gibsland, Louisiana, Inc. (Gibsland Council); and 17 individuals who are officers, directors or members of the Councils. It is alleged that, by their individual and concerted actions, the defendants have deprived and are depriving some 570 Negro citizens of Bienville Parish, who formerly were registered voters there, of the right to register and vote in any elections held in the Parish. The prayer for relief is that all defendants be temporarily and permanently enjoined from any further action in that respect, and that the Negroes whose registrations were cancelled in October, 1956, be ordered reinstated upon the voting rolls of the Parish. It is also prayed that a voting referee be appointed pursuant to § 1971 (e).

Inasmuch as all of the individual defendants, except the Registrar, claimed the protection of the 5th Amendment against self-incrimination, and refused to testify, and because the Government's case was so thoroughly documented by the Registrar's own records, there is very little dispute as to the facts; indeed, there is *no* dispute except as to whether the Registrar continues to discriminate against Negroes being permitted to reg-

ister and vote, solely on account of their race or color.

Under the Constitution and laws of the State of Louisiana, registration for voting is a prerequisite to voting at any election by the people. Prior to January 1, 1957, registration for voting in Bienville Parish, Louisiana, was under the periodic registration system, whereby complete re-registration of all voters was required every four years.

Under Louisiana law (LSA–R.S. 18:132, 133, 244), any two registered voters may file affidavits with the Registrar challenging the registration status of any other voter; and the Registrar has the duty, if she has reason to believe that a voter is illegally registered, or has lost the right to remain on the rolls, to so notify the challenged voter by sending him a citation to appear at her office within 10 days and prove his right to remain on the rolls, by an affidavit executed by three other *bona fide* registered voters of the Parish. If the challenged voter fails satisfactorily to comply with the citation, his name is erased from the rolls.

Louisiana law further provides that an applicant for registration must be able to read, and give a reasonable interpretation of, any provision of the Constitution of Louisiana or of the United States (LSA–R.S. 18:35); and he must complete his registration form in his own handwriting, without assistance (LSA–R.S. 18:31). If the Registrar has reasonable grounds to believe that an applicant is not the person he represents himself to be, the Registrar may require him to produce two qualified registered voters of his precinct to identify him (LSA–R.S. 18:37).

In Bienville Parish there are approximately 6,120 white persons and 4,475 Negroes of voting age. Immediately prior to October, 1956, there were approximately 5,284 white persons and 595 Negroes registered to vote in the Parish. In elections held prior to then, the Negro voters had engaged in the reprehensible practice of "bloc voting," i. e., all or most of their votes were cast one way or another.

In September, 1956, it was planned that the permanent voter registration system would be instituted by the Bienville Parish governing body, the Police Jury, to become effective January 1, 1957. On September 24, 1956, a joint meeting of the Arcadia and Gibsland Councils was held at the American Legion Club in Arcadia, with Raymond Masling, the Association's Executive Director, being present to give advice. It then was decided unanimously to purge the voting rolls of the Parish of "illegally registered" voters, no mention of race or color being incorporated in the minutes of the meeting. It is clear, however, from the actions subsequently taken, that the plan was to purge most of the Negroes—the "bloc voters"—from the rolls.

On the evenings of September 26, 27 and 28, 1956, the Registrar opened her office, after regular hours, to the individual defendants and assisted them in conducting the "purge". As the result of their efforts, the registrations of some 570 Negroes were challenged, constituting approximately 95% of all Negroes registered. Only 35 white registrations, being less than 1% of the total, were challenged, although an examination of the white registration cards in evidence discloses that about 80% contain the same, or similar, errors for which Negro registrations were challenged. Of the white registrations actually challenged, approximately one-half of these persons had moved away from the Parish. All of this was well known to the Registrar, who actively participated in this concerted discrimination by the Councils and individual defendants, on account of the race or color of the Negro registrants.

Within the ten-day period allowed by State law for answering the challenges, some 50 to 100 Negroes went to the Registrar's office for the purpose of reinstating their registrations. Many were accompanied by one, two or three registered voters who also had received letters of challenge. The Registrar, contrary

to State law, refused to allow any voter who had been challenged to execute an affidavit of retention for other challenged voters. Consequently, the names of all the 570 Negroes whose registrations had been challenged were removed from the rolls.

The day after the purge was completed the Arcadia Council voted unanimously to urge adoption of a permanent registration system in Bienville Parish. In November, 1956, about one month later, the Police Jury adopted an ordinance to accomplish that purpose, effective January 1, 1957. In transferring to the permanent registration system, the Registrar placed the names of all persons who were registered voters on December 31, 1956, upon the permanent registration rolls. They were not required to reapply for registration, but simply had to sign, and return to her, their permanent certificates which she had sent to them.

As of December 31, 1956, there were 5282 white persons and 35 Negroes registered to vote in Bienville Parish. As of October 8, 1960, there were 5184 white persons and 26 Negroes on the permanent registration rolls.

While the Registrar, in her testimony, vehemently protested that she had never discriminated against Negroes because of their race, the truth is that she has done so continuously, not only in the 1956 purge but even until the time this case was tried in November, 1960. Since 1956 she has registered 925 white persons and no Negroes, although numerous members of the Negro race have attempted to register. Of these 925 white persons, substantially more than one-third executed application cards containing the same or similar errors as were on the cards of the Negroes challenged. The Registrar has removed no names from the rolls since 1956, except for reasons of conviction of crime, death, and change of residence.

At the trial the Government presented a veritable parade of Bienville Parish Negroes, holding bachelor's and master's degrees, who, since 1956, on one technicality or another, have been denied the right to register or re-register. An equally impressive group of white persons testified that they were permitted to register, although their application cards contained substantial errors, and their level of education was far below those of many of the Negro applicants. It is perfectly clear from all the evidence that the Registrar arbitrarily has discriminated against Negroes in identification requirements and has applied far more stringent qualification standards upon Negro applicants than she has upon whites, solely because of race. This she has continued to do, and no doubt will do in the future unless judicially restrained.

While we deplore the Negro practice of "bloc voting" with which all observant persons are familiar, not only in Bienville Parish, but in practically all parts of the country, still this factor cannot alter one whit our duty under the 15th Amendment to see to it, wherever we are called upon to do so, that there is no discrimination in voting registration because of race or color. It is to be earnestly hoped that in the future those Negroes who are qualified to vote will achieve a degree of political maturity so as to vote according to the best interests of their State and Nation rather than for their own selfish or venal purposes.

The Supreme Court has held, in United States v. Thomas, 1960, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535, affirming United States v. McElveen, D.C., 180 F. Supp. 10, that a pattern or practice of discrimination, such as described above, committed by all defendants, is action of the State of Louisiana, forbidden by the 15th Amendment and 42 U.S.C. § 1971 (a). Therein the Court also held that proper judicial action in such a case is to order that the Registrar be enjoined from giving legal effect to the massively discriminatory challenges, and that the Registrar be ordered to restore to the registration rolls the names of those thus illegally removed. As a lower federal court we have no choice but to follow that decision here.

**912**

Accordingly, a decree to that effect will be entered, except that those who have died, moved from the Parish, or become disqualified by conviction of crime, will not be included; and the Registrar, whose discrimination has continued through the years, also will be enjoined (as well as her successors), against any future discrimination in conducting the affairs of that office.

As to the other defendants, since their part in this was accomplished nearly five years ago, and they will be advised by this ruling, we will deny for the present the application for an injunction against them, retaining jurisdiction, however, in the event they renew their unlawful activity. We find that appointment of a voting referee is not now necessary.

A proper decree should be presented on notice.