**UNITED STATES of America**

v.

**Estelle WILDER, Registrar of Voters of Jackson Parish, Louisiana, the State of Louisiana, The Citizens Council of Jackson Parish, Louisiana, G. W. Acklin, et al., Individually and as Members of The Citizens Council of Jackson Parish, Louisiana.**

**Civ. A. No. 8695.**

United States District Court
W. D. Louisiana,
Monroe Division.

Oct. 23, 1963.

Robert F. Kennedy, Atty. Gen., Burke Marshall, Asst. Atty. Gen., John Doar, David Norman, Frank M. Dunbaugh, and Richard K. Parsons, Attys., Civil Rights Division, Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., for the Western District of Louisiana, Shreveport, La., for the Government.

Jack P. F. Gremillion, Atty. Gen., of Louisiana, Carroll Buck, First Asst. Atty. Gen., Harry J. Kron, Jr., Asst. Atty. Gen., Baton Rouge, La., Ferdinand A. Cashio, Asst. Atty. Gen., Shreveport, La., Fred L. Jackson, Dist. Atty., for the Second Judicial District, Homer, La., W. Jackson Emmons, Asst. Dist. Atty., Jonesboro, La., Jasper E. Jones, Jones, Blackwell, Chambliss & Hobbs, West Monroe, La., David T. Caldwell, Jonesboro, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

## FINDINGS OF FACT

1. This suit was filed on February 21, 1962, by the Attorney General of the United States under the Civil Rights Act of 1957, as amended (42 U.S.C. § 1971). The Complaint charged the defendants with acts and practices which have deprived citizens of the United States of the right to register to vote in Jackson Parish, Louisiana, without distinction of race or color.

2. Defendants in this case are Estelle Wilder, Registrar of Voters of Jackson Parish; the State of Louisiana; the Citizens' Council of Jackson Parish; and six individuals who were members of the Citizens' Council of Jackson Parish in the Fall of 1956.

(a) Mrs. Wilder has been the Registrar of Voters in Jackson Parish since 1951. As Registrar of Voters her function is to receive applications for registration from prospective electors and to determine whether or not they are qualified to register to vote. Mrs. Wilder maintains her office at Jonesboro, Louisiana, in Jackson Parish, and also resides in Jackson Parish.

(b) The defendant members of the Citizens' Council of Jackson Parish are Louie C. Boss, Rufus G. Pipes, G. W. Acklin, Harold C. Haile, Joseph W. Dark, Jr., and R. L. Salter. They reside in Jackson Parish.

3. In 1960 there were 6,607 white persons and 2,535 Negroes of voting age in Jackson Parish. The Parish installed a permanent registration system in 1957 by which all persons who have registered to vote since January 1, 1953, are permanently registered. As of August 31, 1962, there were 5,613 white persons and 478 Negroes registered to vote in the Parish. Thus, about 84 percent of the eligible white persons and 18 percent of the eligible Negroes were registered to vote at that time.

4. In October 1956, the Citizens' Council of Jackson Parish and the individual defendants challenged the registration status of 953 of the 1,122 Negro voters and 13 of the 5,450 white voters. The defendant registrar thereafter removed the names of all of these challenged voters from the voter rolls of Jackson Parish. The challenges were based on alleged errors, omissions, and handwriting differences on the original application cards of the voters. These alleged deficiencies were not deficiencies under the standards applied by the registrar at the time these voters registered and the application cards of approximately 75 percent of the white voters who were not challenged contained similar deficiencies. The defendant registrar, knowing this fact and that only Negroes were challenged, mailed a copy of the affidavit of challenge together with a notice to erase to each of the challenged voters. She did this on the day the registration books closed in preparation for the November general election. Thereafter, she removed the names of all of these challenged voters from the voter rolls. This purge of voters was racially discriminatory in purpose and effect.

5. Following the removal of nearly all of the Negro voters from the voter rolls, Jackson Parish adopted the perma-

nent registration system. All persons registered as of January 1, 1957, were automatically given permanent registration status.

6. From the time the defendant registrar took office in 1951, and particularly after January 1957 when permanent registration was installed, and until September, 1962, the defendant registrar progressively tightened the registration requirements in Jackson Parish.

(a) Between 1951 and 1953 the defendant Registrar filled out the application form for every applicant. Both the ordinary substantive qualifications for voting such as age and residence in all tests were imposed. Under this system 4,305 white persons and 760 Negroes registered to vote.

(b) Between January 1953 and January 1957 the defendant Registrar asked applicants for registration to fill out their own application cards, except for those who requested her to fill them out and except for illiterates. The defendant Registrar did not require that the application cards be filled out completely or with proficiency. Under the standards then used, 5,450 white persons and 1,122 Negroes became registered to vote.

(c) Between 1957 and 1959, after most of the Negro voters had been purged and the white voters had been put on permanent registration, the defendant Registrar adopted the requirement that the application card was to be used as a strict examination. It was the same requirement which the Citizens' Council had applied in purging the Negro voters. The slightest technical imperfections in the executed application form were a basis for rejecting the application. By 1959 the registration rolls consisted of 4,952 white persons and 359 Negroes.

(d) Commencing in about 1959, the defendant Registrar began testing applicants on their ability to read the form aloud, their ability to define the more difficult words on the form, and their ability to compute their age to the year, month, and day. These tests were in addition to the satisfactory completion of the application form.

(e) In March 1960, defendant Registrar began requiring applicants for registration to read and give a satisfactory interpretation of a provision of the federal Constitution. This interpretation test was in addition to all of the other tests. By this time there were 5,768 white persons and 482 Negroes on the voter rolls.

(f) In 1961, the defendant Registrar began to require applicants for registration to read aloud and to write from dictation a portion of the preamble to the Constitution of the United States. With this additional requirement, which was brought about by the change in Louisiana law, the defendant Registrar ceased using her test which required applicants to read aloud, define words, and recompute ages. At this time there were 5,804 white and 483 Negro voters in Jackson Parish.

(g) In September 1962, the defendant Registrar put into effect the new "citizenship" test adopted by the State Board of Registration in the previous month. At this time, 5,613 white persons and 478 Negroes were registered to vote. The interpretation test was abandoned but the use of the application form as a literacy test was retained. So, too, was the test requiring applicants for registration to read aloud and to write from dictation a portion of the preamble to the Constitution of the Unit-

ed States. Under the "citizenship" test, which is simple and fair, having been taken from the Department of Justice manual given aliens applying for citizenship, all applicants for registration, Negro or white, must answer correctly 4 of 6 questions on citizenship, government, and history.

(h) On October 18, 1962, the State Board of Registration adopted a resolution which provides that rejected applicants must wait ten days before they will be permitted to reapply for registration. In addition, each applicant must complete his application within 40 minutes.

7. Between October 1956 and September 1962 the defendant Registrar rejected about 64 percent of the applications of Negroes and only about 2 percent of the applications of white persons. This discriminatory result was brought about by the defendant Registrar applying strict tests to Negro applicants but not to white applicants.

(a) The defendant Registrar, prior to September 1962, has used the application form as an examination for Negroes but not for white persons. She has rejected Negro applicants because of technical errors and omissions on their application forms, but has not rejected white applicants for similar errors and omissions. White applicants have received aid and assistance in filling out their applications but Negro applicants have not received assistance.

(b) The defendant Registrar, prior to September 1962, has subjected Negro applicants to other tests to which she has not subjected white applicants. She has required Negro applicants, but not white applicants, to read the application form aloud, to pronounce words properly, to define words and to recompute their ages. She has rejected otherwise qualified Negro applicants who have failed to perform on these tests to her satisfaction. In addition, the defendant Registrar has required Negro applicants but not white applicants to interpret sections of the federal Constitution. She did not permit applicants to refer to the section they were to interpret. She has rejected otherwise qualified Negroes for failure to interpret to her satisfaction a section of the Constitution. She has rejected otherwise qualified Negro applicants for mispronouncing in reading and misspelling in writing but did not reject white applicants for mispronouncing or misspelling words in the preamble.

The defendant Registrar, prior to September 1962, has rejected 23 Negro school teachers since the purge. She has rejected Negro school teachers for technical errors on their application forms, for failing to interpret the Constitution to her satisfaction, and for misspelling words in the preamble.

(d) During the same period the defendant Registrar has registered white applicants who are unable to read and to understand the application form.

8. The acts and practices of the defendants as set forth in Findings Nos. 4 through 7 have deprived Negro citizens of the right to vote without distinction of race or color.

9. The requirements applied to white applicants who became registered to vote during the period October 8, 1956, to August 31, 1962, have been those of citizenship, age, residence, minimal literacy and absence of evidence of bad character or conviction of a disqualifying crime.

10. Unless restrained by order of this Court, the defendant State and the

defendant Registrar may continue to engage in racially discriminatory acts and practices, such as described above.

11. The defendants The Citizens' Council of Jackson Parish, Louisiana, and the individual members thereof named above, filed no answer to this suit. On June 12, 1962, on motion by plaintiff, a default was entered against them and they were duly notified of this by the Clerk. Not until February 26, 1963, more than 8 months later, did they move to set aside the default.

12. Plaintiff filed its brief herein on March 22, 1963, but, although repeated reminders and requests have been made, no brief has been filed on behalf of the other defendants.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under 42 U.S.C. § 1971(d) and under 28 U.S.C. § 1345.

2. The Attorney General is authorized to institute this action on behalf of the United States under 42 U.S.C. § 1971(c) to obtain preventive relief against acts and practices by the defendants which would deprive other persons of rights and privileges secured by 42 U.S.C. § 1971(a).

■ 3. The State of Louisiana is properly joined as a party defendant pursuant to Section 601(b) of the Civil Rights Act of 1960, 42 U.S.C. § 1971(c).

4. Acts and practices of the defendant Registrar which violate 42 U.S.C. § 1971(a) are also the acts and practices of the defendant State. Civil Rights Act 1960, Sec. 601(b).

5. 42 U.S.C. § 1971(a) forbids any distinctions in the voting process, including registration for voting, based upon race or color.

■ 6. The defendant Citizens' Council and the defendant members thereof, in challenging the registration status of over 85% of the Negro voters in Jackson Parish engaged in acts and practices under color of law which were racially discriminatory in purpose and effect in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States. The challenges having been unlawful were null, void and ineffective for any purpose and the voters taken off the registration rolls as a result of these challenges were accordingly illegally removed therefrom.

■ 7. The fact that the defendant Registrar has over a six-year period rejected 64% of the applications of Negroes and has accepted 98% of the applications of white persons creates the presumption that Negro citizens have been deprived of the right to vote without distinction of race or color; and in the absence of proof by the defendants that the rejected Negroes were not qualified under the standards and requirements applied to the accepted white persons, discrimination must be found.

■ 8. The practice of denying registration to Negro applicants on account of errors or omissions on their application forms while registering white applicants who have made similar errors or omissions on their applications is in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

9. The former practice of denying registration to Negro applicants on account of errors or omissions on their application forms while registering white applicants who have been aided and assisted in filling out their application forms is in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

■ 10. The former practice of requiring Negro applicants but not white applicants to read aloud portions of the application form, to pronounce the words on the application form correctly, to define words on the application form, and to recompute their ages after having computed them correctly is in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

■ 11. The mass challenge of Negroes, as described in Finding No. 4,

solely on account of their race, was not only null, but all of those so challenged, who have not died, moved from Jackson Parish, or become disqualified by the provisions of Louisiana law, should be reinstated on the voter registration rolls, and certificates issued to them. United States v. Ass'n of Citizens Councils of La., D.C., 196 F.Supp. 908; United States v. Thomas, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535.

12. The motion to set aside the default entered against the Citizens' Council of Jackson Parish, Louisiana, and the individual members thereof named above, is without merit and denied.

### DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date:

1. This Court finds specifically that the defendants have engaged in acts and practices which have deprived Negro citizens in Jackson Parish, Louisiana, of the right secured by 42 U.S.C. § 1971(a).

2. The Citizens' Council of Jackson Parish, Louisiana; and G. W. Acklin; Louie C. Boss; Joseph W. Dark, Jr.; Harold C. Haile; Rufus G. Pipes; and R. L. Salter, individually and as members of the Citizens' Council of Jackson Parish, Louisiana, together with their agents and any persons acting in concert with them, are hereby enjoined from causing or initiating challenges or filing any affidavits of challenge which have as their purpose or effect discrimination based on race or color against registrants of Jackson Parish, Louisiana, and from engaging in any other acts or practices which would interfere with the rights of any citizen of the United States to vote in any election.

3. Estelle Wilder, Registrar of Voters of Jackson Parish, Louisiana, and the State of Louisiana, their deputies, agents and successors, are hereby enjoined from:

(a) Giving any legal effect whatsoever to the approximately 953 challenges filed in the office of the Registrar of Voters of Jackson Parish, Louisiana, against Negro registrants of that Parish in October 1956;

(b) Permitting the names of any of the approximately 953 persons challenged as set out in paragraph 3(a) of this Decree to remain off the permanent and current rolls of qualified voters of Jackson Parish, Louisiana, longer than 60 days from the date of this Decree. The purpose of this paragraph is to require the Registrar of Jackson Parish to do whatever is necessary to be done to reinstate within 60 days from the date of this Decree upon the permanent rolls of qualified voters in Jackson Parish, Louisiana, the names of all the Negroes who were challenged and removed from the rolls in 1956 and who have not subsequently become registered or become disqualified by reason of death, conviction, or removal from the Parish.

(c) Acting upon or giving effect to any challenges of registrants in Jackson Parish, Louisiana, which might thereafter be filed which have as their purpose or effect discrimination based upon race or color.

4. It is further ORDERED, ADJUDGED and DECREED that the defendant State of Louisiana and the defendant Estelle Wilder, Registrar of Voters of Jackson Parish, Louisiana, their agents, officers, employees, successors in office and all persons in active concert with them be and each hereby is enjoined from engaging in any act or practice which involves or results in distinctions of race or color in the registration of voters in Jackson Parish, Louisiana. Specifically, and in addition to the foregoing general injunction, each of said defendants and persons is enjoined from:

(a) Applying different and more stringent registration qualifications, requirements, procedures and standards to Negro applicants for registration than those

which are applied to white applicants in determining whether or not such applicants are qualified to register to vote in Jackson Parish, Louisiana.

(b) Requiring applicants for registration to read aloud any portion of the application form or to pronounce or define any words or statements therein, or to recompute their ages after they have already stated their ages on their applications.

(c) Requiring any applicant for registration to understand or interpret any portion of the Constitution.

5. It is further ORDERED that said defendants in passing upon an applicant's qualifications shall comply with the following standards and procedures:

(a) Applicants who possess the qualifications established by Louisiana law must be registered, and it is the duty of the Registrar to determine whether the applicants possess these qualifications.

(b) If from the information contained on the application form the Registrar is unable to determine whether the applicant possesses the qualifications of citizenship, age, residence, or if the Registrar is unable to determine whether the applicant is disqualified by reason of bad character or conviction of a disqualifying crime, then the Registrar should obtain the necessary information either by pointing out the deficiency to the applicant and permitting him to supply the necessary information on his application form, or by questioning the applicant and noting the necessary information on his form. If the information supplied by the applicant on his application form would disqualify him from registration if true, the registrar shall call this fact to his attention to insure that the information is correct and if it is incorrect permit the applicant to correct his answers if he so desires. It is the duty of the registrar to determine whether the applicant is qualified for registration to vote and the registrar cannot justify the rejection of any applicant on the ground that the registrar does not have sufficient information about the applicant from which to determine whether the applicant is qualified, unless the applicant refuses to furnish the necessary information after the insufficiency has been called to his attention.

6. It is further ORDERED that the defendant Registrar submit to the Clerk of this Court in writing and a copy thereof to the plaintiff on or before the tenth day of each month after the date of this Decree and until further order of this Court, a report as to her progress in receiving and processing applications for registration during the preceding calendar month. The report shall include:

(1) The dates and places applications were received during the preceding report period and the hours during which the registrars were available to receive applications.

(2) The action taken by the Registrar on applications for registration during the preceding report period which with respect to accepted applications will state the name and race of the applicant, and date of application, and with respect to rejected applications, the name and race of the rejected applicant, date of application, and the specific reason for his rejection.

7. It is further ORDERED that defendant Registrar make available at the office of the Registrar all registration records of Jackson Parish, Louisiana, for inspection and photographing by agents

of the United States at any and all reasonable times.

The costs incurred in this proceeding to date are hereby taxed against the defendant Estelle Wilder, in her capacity as Registrar, and against The Citizens' Council of Jackson Parish, Louisiana, and the remaining individual defendants, G. W. Acklin; Louie C. Boss; Joseph W. Dark, Jr.; Harold C. Haile; Rufus G. Pipes; and R. L. Salter.