**R. Eugene PINCHAM, Plaintiff,**

v.

**The ILLINOIS JUDICIAL INQUIRY BOARD and its Members: Robert P. Cummins, Chairman, Darrell McGowen, Vice Chairman, Honorable Philip B. Benefiel, Honorable Edward H. Marsalek, Mary Sue Hub, William J. Kuhfuss, Patrick F. Mudron, Jon R. Waltz and Ray F. Breen, Executive Director, and the Illinois Courts Commission and its Members: Honorable Thomas J. Moran, Chairman, Honorable Allan L. Stouder, and Honorable Rodney A. Scott, Defendants.**

**No. 87 C 5058.**

United States District Court,
N.D. Illinois, E.D.

March 4, 1988.

Robert E. Pincham, Jr., Robert E. Pincham, Jr. & Associates, Chicago, Ill.

Dan K. Webb, Steven F. Molo, Winston & Strawn, Chicago, Ill., for defendants Illinois Judicial Inquiry Bd., Cummins, McGowen, Benefiel, Marsalek, Hub, Kuhfuss, Mudron, Waltz and Breen.

James R. Carroll, Moshe Jacobius, Office of the Illinois Atty. Gen., Chicago, Ill., for defendants Illinois Courts Com'n, Moran, Stouder and Scott.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is a civil rights action brought by Justice R. Eugene Pincham, Justice of the Appellate Court of Illinois, First District. The defendants are the Illinois Judicial Inquiry Board, its members and executive director (hereinafter "Inquiry Board") and the Illinois Courts Commission and three of its members (hereinafter "Courts Commission"). Presently pending before the Court are: 1) Justice Pincham's motion for the impanelment of a three-judge court; 2) Justice Pincham's motion to file a Second Amended Complaint adding a federal voting rights claim; and 3) the Inquiry Board and Courts Commission's motions to dismiss the action.

### II. AMENDED COMPLAINT

The current complaint is Justice Pincham's Amended Complaint filed on August 14, 1987. Justice Pincham was granted leave to file his Amended Complaint on June 18, 1987. Although the actual filing did not take place until two months later, the Court understands that copies of the Amended Complaint were distributed to the defendants on or about June 18, 1987. Also on August 14, 1987, Justice Pincham filed a motion for leave to further amend his complaint by adding a federal voting rights claim in a second count. Without

waiting for the Court to rule on his motion for leave to amend, Justice Pincham filed his proposed new complaint. The proposed complaint, found at docket entry 37, is improperly titled. It should be entitled "Second Amended Complaint." The propriety of Justice Pincham's proposed Second Amended Complaint is discussed in part IV below. The current pleading before the Court is the Amended Complaint.

### A. Facts Alleged in Amended Complaint

Justice Pincham is a black state court appellate judge. On January 31, 1987, Justice Pincham spoke at an Operation P.U.S.H. Saturday Forum. The Amended Complaint states that the following incomplete sentence was extracted from that speech and highly publicized: " 'Any man south of Madison Street who cares to vote in the February 24th election who doesn't cast a vote for Harold Washington, ought to be hung....'" (Amended Complaint at ¶ 24).

According to the Amended Complaint, on February 23, 1987, Justice Pincham received a letter from defendant Robert B. Cummins, then Chairman of the defendant Inquiry Board. The letter enclosed a transcript of Justice Pincham's remarks at the Forum and stated that the Inquiry Board proposed charges that his participation in and remarks at the Forum constituted political activity in violation of Illinois Supreme Court Rules 62, 67(A)(2) and 67(A)(4) and the introductory paragraph to Rule 61.[1] Paragraph 27 of the Amended Complaint quotes the letter as stating that Justice Pincham's conduct at the Forum constituted " 'willful misconduct in office and conduct that is prejudicial to the administration of justice and brings the judicial office into disrepute, in violation of Article VI, Section 15 of the Illinois Constitution.'" In addition, the letter informed Justice

Pincham that before the Inquiry Board determined whether there existed a reasonable basis to file a complaint against him with the defendant Courts Commission, he was being notified of the charges and was required to respond to them before the Inquiry Board on March 13, 1987. (Amended Complaint at ¶ 27).

The Amended Complaint alleges that Justice Pincham and his attorneys did appear before the Inquiry Board on March 13, 1987, and presented certain constitutional arguments. They argued that Illinois Supreme Court Rules 61, 62, 67(A)(2), and 67(A)(4) did not prohibit Justice Pincham's Operation P.U.S.H. speech and that if the rules were applied or construed to prohibit his speech, then the rules violate constitutional guarantees of freedom of speech. In addition, they argued before the Inquiry Board that the rules violated due process and *ex post facto* prohibitions because of their vagueness, ambiguity, and uncertainty. Furthermore, they maintained that no reasonable basis existed to file a complaint against Justice Pincham with the Courts Commission. (Amended Complaint at ¶ 28). Subsequently, Justice Pincham submitted a written memorandum of authorities to the Inquiry Board supporting his claims. A copy of the memorandum was attached to the original Complaint in this action and remains incorporated as part of the Amended Complaint. (Amended Complaint at ¶ 29).

### B. Legal Claims

The Amended Complaint charges that the filing of a complaint by the Inquiry Board with the Courts Commission would violate Justice Pincham's "Constitutionally protected right of free speech, Equal Protection of the Law, Due Process and is further violative of 42 U.S.C. Section 1981 and 42 U.S.C. Section 1983."[2] (Amended

---

1. These Rules are part of the Illinois Code of Judicial Conduct, *Ill.Rev.Stat.* ch. 110A, ¶¶ 61–71, effective January 1, 1987.

2. Justice Pincham does not mention his purported 42 U.S.C. § 1981 claim in his response to the defendants' motions to dismiss. In fact, in that brief Justice Pincham describes his claim as follows: "[t]he complaint in the case at bar filed

by Justice Pincham challenges the constitutional validity of these Illinois Supreme Court rules, the proceedings before the Board and any potential proceedings before the Illinois Courts Commission under the free political speech guarantee of the First Amendment to the Constitution of the United States." (Plaintiff's "Answer" to motions to dismiss at 2). The Court

Complaint at ¶ 50). The Amended Complaint further alleges that the Supreme Court Rules at issue and the proceedings before the Inquiry Board and Courts Commission have restrained and continue to restrain Justice Pincham in the exercise of his constitutional right of free speech and in his association with members of his political party and race. In addition, Justice Pincham accuses the Inquiry Board and Courts Commission of selective prosecution and violation of his right to equal protection under the Fourteenth Amendment by not taking action against certain other judges for engaging in political activity. (Amended Complaint at ¶ 59). Justice Pincham asks the Court to declare Illinois Supreme Court Rules 67(A)(2) and 67(A)(4) unconstitutional on their face, and as applied, on the grounds that they violate his rights of free speech, equal protection, and due process. Justice Pincham also asks the Court to enjoin the Inquiry Board and its members and the Courts Commission and its members from "filing or proceeding upon any Complaint against Plaintiff premised upon the Plaintiff's January 31, 1987 Operation P.U.S.H. speech...." (Amended Complaint at Prayer For Relief).

## III. MOTION FOR IMPANELMENT OF THREE JUDGE COURT

■ On August 14, 1987, Justice Pincham filed a motion for the impanelment of a three-judge court. The basis for this request was Justice Pincham's contemporaneous motion to further amend his complaint by adding a federal voting rights claim in a second count. The complete text of the motion for impanelment of a three-judge court is set out in the margin.[3] The

motion to further amend is discussed in part IV of this opinion.

As can readily be seen, Justice Pincham's motion does not identify a specific statutory basis for the impanelment of a three-judge court. And, neither the proposed Second Amended Complaint, nor the written motion for leave to amend, discloses the specific statutory basis or bases for Justice Pincham's voting rights claim. It was not until the Court received Justice Pincham's untimely memorandum in response to the defendants' written objections to the further amendment that the Court was provided with a written confirmation of the nature of the new federal statutory claims.[4]

Unfortunately, receipt of Justice Pincham's written response to the defendants' objections did not completely end the mystery. Justice Pincham identified the specific statutory provisions in the following unedited sentence:

[t]he Voting Rights Act, 42 USC Section 1971(a) and Section 1973(a), and (i)(b) protect the rights of all citizens to freely participate in the electoral process and guarantees that black citizens not suffer a punishment or restriction upon their participation which is not also imposed upon white citizens similarly situated.

(Plaintiff's Response Brief at 2). There is, however, no § 1973i(b) within Title 42. The Court therefore assumed that Justice Pincham was referring to § 1973i(b) which is found within Title 42. In summary, the Court has concluded that Justice Pincham has asserted 42 U.S.C. §§ 1971(a), 1973(a) and 1973i(b) as the three bases for his

holds that Justice Pincham abandoned his § 1981 claim by not pursuing it in response to the motions to dismiss.

3. "Now comes the Plaintiff, R. Eugene Pincham, by and through his attorneys, Robert E. Pincham, Jr., Ltd. and T. Lee Boyd, Jr., and Associates, Ltd., and moves this Honorable Court to enter an Order Impanelling a Three Judge Court as provided by the *Voting Rights Act [sic]*, 42 U.S.C. Sec. 1971, et seq."

4. When the motions to amend and for a three-judge court were presented on August 14, 1987, the Court ordered the parties to file cross briefs

on both motions. Justice Pincham failed to file the required brief and instead requested leave to file a response to the defendants' written objections. By order dated August 31, 1987, the Court denied Justice Pincham's request to file a response brief. On February 22, 1988, the Court *sua sponte* reconsidered its decision and granted Justice Pincham's motion for leave to file the response brief. The Court took this step to ensure that Justice Pincham's only written explanation of the nature of his voting rights claim became part of the record.

proposed voting rights claims against the defendants.

Returning to the three-judge court question, not all actions brought pursuant to the federal voting rights statutes, 42 U.S.C. § 1971 *et seq.*, provide for the impanelment of three-judge courts. With regard to Justice Pincham's § 1971(a) claim, assuming *arguendo* that a private right of action exists under this subsection, the provisions of subsections 1971(c) and (d) describe the nature of the cause of action and the jurisdiction of the federal courts. Neither subsection provides for the impanelment of a three-judge court. Indeed, the sole three-judge provision in § 1971 can be invoked only in actions instituted by the United States and only when the Attorney General requests the court to find that a deprivation of rights has occurred pursuant to a pattern or practice. Even after giving Justice Pincham's § 1971(a) claim the broadest possible reading, the Court is unable to conclude that the three-judge provision found in § 1971(g) has been triggered. Therefore, Justice Pincham's § 1971(a) claim does not allow for the impanelment of a three-judge court.

As to Justice Pincham's § 1973(a) and § 1973i(b) claims, and again assuming *arguendo* that private rights of action exist under these subsections, the provisions of § 1973j describe the nature of the causes of action and the jurisdiction of the federal courts. Section 1973j simply does not provide for the impanelment of a three-judge court.

The Court cannot order the impanelment of a three-judge court unless there is a statutory basis for that action. Justice Pincham's only attempt to delineate a statutory basis was his general citation to federal voting rights statutes. Because, as discussed above, those sections of the voting rights statutes upon which Justice Pincham relies in support of his motion to further amend the Amended Complaint do not provide for the impanelment of three-judge courts, the Court holds that it lacks the power to grant Justice Pincham's motion. Therefore, Justice Pincham's motion requesting the impanelment of a three-judge court is denied.

## IV. MOTION TO FURTHER AMEND THE AMENDED COMPLAINT

■ On August 14, 1987, Justice Pincham filed a motion seeking leave of court to further amend his Amended Complaint by adding a federal voting rights claim. The complete text of the motion is set out in the margin.[5] The proposed Count II would add four paragraphs to the allegations of the Amended Complaint. The complete text of the new proposed paragraphs is also set out in the margin.[6] The defendants have raised a number of objections to Justice Pincham's motion for leave to further amend.

The Inquiry Board and Courts Commission's objections fall into two general categories. Both defendants argue that 1) Justice Pincham's conduct has been dilatory

---

**5.** "Now comes the Plaintiff, R. Eugene Pincham, by and through his attorneys, Robert E. Pincham, Jr., Ltd., and T. Lee Boyd, and Associates, Ltd., and moves this Honorable Court to grant leave to file Count II and to add Count II to the Amended Complaint."

**6.** "1) The aforesaid speech delivered by R. Eugene Pincham at Operation P.U.S.H. in January, 1987 was delivered to a racially integrated group of potential voters.

2) R. Eugene Pincham advocated, during the course of his speech, that the racially integrated group of potential voters cast their ballot for a black candidate.

3) It is Plaintiff's contention that the *VOTING RIGHTS ACT, 42 U.S.C. Section 1971 et seq.*, prohibits and precludes the imposition of punishment upon and against black voters for the

exercise of free political speech, *when* such punishments are not imposed upon white citizens similarly situated engaged in political speech or activities.

4) Defendants have represented to this Court that the portion of the speech delivered by R. Eugene Pincham in which he advocated that potential voters cast their election ballot for a black candidate is the basis for the implementation of disciplinary proceedings against R. Eugene Pincham by Defendants, *and Defendants have made no showing* that any similar disciplinary action or punishment has ever been contemplated or imposed by Defendants against any white judge for engaging in any political activity or speech which advocated that potential voters cast their ballot for a black or white candidate." (Emphasis added).

throughout this case and that the proposed amendment is brought in bad faith with the improper motive of causing further delay to the detriment of the defendants, and 2) that the proposed amendment would be futile because the asserted voting rights claims fail to state claims and are meritless.

The standard governing amendments is set out in Federal Rule of Civil Procedure 15(a) which provides in part that "leave [to amend] shall be freely given when justice so requires." While it is certainly true that Justice Pincham's counsel has demonstrated an inability to comply with briefing schedules, the Court cannot conclude based on their past conduct that the present motion has been brought for improper motives. Nor can the Court conclude that the proposed amendment, given the present posture of the case, will *unduly* delay the resolution of this case. Therefore, the Court rejects the defendants' dilatoriness, bad faith, improper motive, and undue delay objections to the amendment. However, the Court finds a great deal of merit in the defendants' futility of amendment arguments as they relate to Justice Pincham's voting rights claims.

As discussed above in part III, Justice Pincham has asserted claims pursuant to three provisions of the federal voting rights statutes—42 U.S.C. §§ 1971(a), 1973(a) and 1973i(b).[7] It is certainly true that Rule 15(a) evidences a policy within the federal courts of freely permitting amendment. As an exercise of its discretion, however, a district court may " 'deny leave to amend where the proposed amendment fails to allege facts which would support a valid theory of liability, ... or where the party moving to amend has not shown that the proposed amendment has substantial merit...." *Goulding v. Feinglass*, 811 F.2d 1099, 1103–1104 (7th Cir.1987)

*cert. denied* —— U.S. ——, 107 S.Ct. 3215, 96 L.Ed.2d 701 (quoting *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979)). The Court will apply this standard to each of Justice Pincham's three statutory claims.

Section 1971(a) of Title 42 provides in relevant part:

(a)(1) All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

(2) No person acting under color of law shall—

(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote;

\*     \*     \*     \*     \*     \*

(e) ... When used in the subsection, the word "vote" includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and proposi-

---

7. As noted in part III, Justice Pincham failed to specify the sections of the voting rights statutes upon which he was relying until well after he filed his motion for leave to amend. Indeed, at the August 14, 1987, hearing, Justice Pincham's counsel was unable to specify the sections upon which his proposed second count was based. The language of proposed Count II, quoted in footnote 5, suggests that Justice Pincham's vot-

ing rights claim is limited to an equal protection analysis. He decries limitations on conduct *only* when similar limitations are not placed on white citizens, or more specifically white judges. The Court believes that Justice Pincham's designation of §§ 1971(a), 1973(a), and 1973i(b) was in actuality an afterthought. Even so, the Court will analyze the merits of his claims under each section.

tions for which votes are received in an election; ....

The essence of a § 1971(a) action is a denial or abridgement of the right to vote. Nowhere in the Amended Complaint as it stands, or in the proposed additional paragraphs, has Justice Pincham alleged that his right to vote has been denied or abridged by the actions of the defendants. Justice Pincham has not, in fact, alleged that anyone's right to vote has been impacted.

Justice Pincham cited to six cases in his response memorandum in support of his voting rights claims: 1) *United States v. McLeod,* 385 F.2d 734 (5th Cir.1967); 2) *United States v. Bruce,* 353 F.2d 474 (5th Cir.1965); 3) *United States v. Wood,* 295 F.2d 772 (5th Cir.1961) *cert. denied* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962); 4) *United States v. Beaty,* 288 F.2d 653 (6th Cir.1961); 5) *United States v. Bibb County Democratic Executive Committee,* 222 F.Supp. 493 (M.D.Ga.1962); and 6) *United States v. Raines,* 189 F.Supp. 121 (M.D.Ga.1960). *Bruce, McLeod, Beaty,* and *Wood* were all actions brought by the government pursuant to § 1971(b) and provide no support for Justice Pincham's § 1971(a) or his § 1973(a) claims. *Bibb County* and *Raines* were § 1971(a) actions that alleged specific activities by the defendants that directly interfered with black citizens' rights to vote. In *Bibb County,* the defendants maintained a system of segregated polling places and segregated voting machines. The defendants also published the election results on a racially designated basis. *Bibb County,* 222 F.Supp., at 494–495. In *Raines,* the defendants maintained a voter registration system that 1) used different colored registration applications for black and white voters, 2) kept registration and voting records segregated by race, 3) delayed black voters' registration applications, 4) gave prospective black voters different and more difficult literacy tests, 5) allowed white applicants to take literacy tests in groups while requiring black applicants to take literacy tests individually, and 6) required a higher literacy standard for black voters than for white voters. *Raines,* 189 F.Supp., at 133–134.

Justice Pincham has not alleged any conduct by the defendants that is even remotely similar to the abhorrent actions of the defendants in *Bibb County* or *Raines.* Therefore, neither of these two cases provides any support for his § 1971(a) claim.

The Court holds that Justice Pincham has failed to allege facts that would support a theory of liability under § 1971(a). The Court further holds that Justice Pincham has failed to show that his proposed § 1971(a) claim has substantial legal merit. Therefore, Justice Pincham's motion to further amend the Amended Complaint to include a 42 U.S.C. § 1971(a) claim is denied.

■ Section 1973 of Title 42 provides in relevant part:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, ... as provided in subsection (b) of this section.

(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

(Emphasis in original). As with a § 1971(a) action, the essence of a § 1973(a) action is a denial or abridgement of the right to vote. Justice Pincham's failure to allege that he

or anyone else has had their right to vote denied or abridged by the actions of the defendants is fatal to a § 1973(a) action. Justice Pincham has cited not a single case in support of his proposed § 1973(a) claim. None of the six cases discussed above were brought pursuant to § 1973.

The Court holds that Justice Pincham has failed to allege facts that would support a theory of liability under § 1973(a). The Court further holds that Justice Pincham has failed to show that his proposed § 1973(a) claim has substantial legal merit. Therefore, Justice Pincham's motion to further amend the Amended Complaint to include a 42 U.S.C. § 1973(a) claim is denied.

■ Section 1973i(b) of Title 42 provides: (b) No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 1973a(a), 1973d, 1973f, 1973g, 1973h, or 1973j(e) of this title.

This section proscribes conduct that amounts to intimidation, threats, or coercion. As discussed in footnote 6, Justice Pincham's proposed additional count is phrased in equal protection terms. His new allegations are therefore inconsistent with the language of this section which is not aimed at disparate treatment. Justice Pincham's reference to this section is particularly indicative of how the horse came after the cart with regard to his voting rights claims.

Beyond the general inconsistency between Justice Pincham's allegations of disparate treatment and the provisions of this section, there is also no allegation that the defendants *intended* to intimidate, threaten, or coerce Justice Pincham. Allegations and later proof of such an intent is an essential element of a § 1973i(b) claim. *Olagues v. Russoniello,* 797 F.2d 1511, 1522 (9th Cir.1986) *vacated on other grounds* — U.S. ——, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987). Additionally, Justice Pincham has cited not a single case in his response to the defendants' objections that even mentions § 1973i(b).

The Court holds that Justice Pincham has failed to allege facts that would support a theory of liability under § 1973i(b). The Court further holds that Justice Pincham has failed to show that his proposed § 1973i(b) claim has substantial legal merit. Therefore, Justice Pincham's motion to further amend the Amended Complaint to include a 42 U.S.C. § 1973i(b) claim is denied.

Having determined that Justice Pincham has not met his burden with regard to any of his three purported statutory claims, the Court denies his motion to further amend his Amended Complaint by adding a second count.[8]

## V. MOTIONS TO DISMISS

Both the Inquiry Board and the Courts Commission have moved to dismiss this action on ripeness grounds, under the abstention doctrine first articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and under the

---

8. On August 14, 1987, the Court denied the petition of Operation P.U.S.H. to intervene in this action as a plaintiff. In response to the defendants' standing argument, Justice Pincham asks the Court to reconsider its decision to deny intervention. (Plaintiff's Response Brief at 2). The Court did not reject Justice Pincham's § 1971(a), § 1973(a), and § 1973i(b) claims for lack of standing. Nevertheless, the Court wishes to specifically note that Operation P.U.S.H.'s intervention would not have saved the voting rights claims. Along with its petition to intervene, Operation P.U.S.H. filed a document entitled "Notice of Adoption of Pleadings" the entire text of which is as follows: "[n]ow comes the plaintiff OPERATION P.U.S.H., by and through its attorney, Lewis Myers, Ltd., and to avoid unnecessary delay in these proceedings, respectfully adopts the pleadings filed in the cause by plaintiff R. Eugene Pincham and further adopts the pleadings filed on his behalf by all amicus curiae." The wholesale adoption contemplated by Operation P.U.S.H. obviously would have failed to rectify the deficiencies in Justice Pincham's pleadings and arguments that led to the Court's holdings against the voting rights claims.

*Pullman* abstention doctrine. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). As set out below, the Court finds Justice Pincham's claims to be ripe for adjudication, but agrees with the defendants that the *Younger* abstention doctrine requires the dismissal of this action in favor of the state proceedings. Because the *Younger* doctrine is controlling, the Court does not reach the applicability of the *Pullman* doctrine. Before turning to an examination of the applicability of the *Younger* doctrine to this case, it is appropriate to discuss both the nature and posture of the state proceedings about which Justice Pincham complains.

### A. The State Proceedings

#### (1) Their Nature

▇▇▇ Both the Inquiry Board and the Courts Commission were created and empowered by the 1970 Illinois Constitution:

(b) A Judicial Inquiry Board is created. The Supreme Court shall select two Circuit Judges as members and the Governor shall appoint four persons who are not lawyers and three lawyers as members of the Board. No more than two of the lawyers and two of the non-lawyers appointed by the Governor shall be members of the same political party. The terms of Board members shall be four years. A vacancy on the Board shall be filled for a full term in the manner the original appointment was made. No member may serve on the Board more than eight years.

(c) The Board shall be convened permanently, with authority to conduct investigations, receive or initiate complaints concerning a Judge or Associate Judge, and file complaints with the Courts Commission. The Board shall not file a complaint unless five members believe that a reasonable basis exists (1) to charge the Judge or Associate Judge with willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute, or (2) to charge

that the Judge or Associate Judge is physically or mentally unable to perform his duties. All proceedings of the Board shall be confidential except the filing of a complaint with the Courts Commission. The Board shall prosecute the complaint.

(d) The Board shall adopt rules governing its procedures. It shall have subpoena power and authority to appoint and direct its staff. Members of the Board who are not Judges shall receive per diem compensation and necessary expenses; members who are Judges shall receive necessary expenses only. The General Assembly by law shall appropriate funds for the operation of the Board.

(e) A Courts Commission is created consisting of one Supreme Court Judge selected by that Court, who shall be its chairman, two Appellate Court Judges selected by that Court, and two Circuit Judges selected by the Supreme Court. The Commission shall be convened permanently to hear complaints filed by the Judicial Inquiry Board. The Commission shall have authority after notice and public hearing, (1) to remove from office, suspend without pay, censure or reprimand a Judge or Associate Judge for willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute, or (2) to suspend, with or without pay, or retire a Judge or Associate Judge who is physically or mentally unable to perform his duties.

(f) The concurrence of three members of the Commission shall be necessary for a decision. The decision of the Commission shall be final.

(g) The Commission shall adopt rules governing its procedures and shall have power to issue subpoenas. The General Assembly shall provide by law for the expenses of the Commission.

ILL. CONST. 1970 art. VI, § 15(b)-(g). These provisions of the Illinois Constitution create "a comprehensive system of judicial discipline." *Owen v. Mann*, 105 Ill.2d 525, 86 Ill.Dec. 507, 511, 475 N.E.2d 886, 890 (1985).

The interrelationship between the Inquiry Board, the Courts Commission, the Illinois Supreme Court, and the Illinois trial and appellate courts has come before the Illinois Supreme Court twice since the 1970 Constitution took effect. In *People ex rel. Harrod v. Illinois Courts Commission*, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53 (1977), the Illinois Supreme Court analyzed the extent of the Courts Commission's authority under the Illinois Constitution. The Court ordered the Courts Commission to expunge a sanction against a Judge which the Courts Commission had entered after determining that the Judge had misapplied a Illinois criminal sentencing statute. The Court noted that "[i]nasmuch as the Commission is not a part of the tripartite court system in this State, it possesses no power to interpret statutory ambiguities or to compel Judges to conform their conduct to any such interpretation." *Id.*, 14 Ill.Dec., at 261, 372 N.E.2d, at 66. The Court also held that "only conduct violative of the Supreme Court Rules of judicial conduct may be the subject of a complaint before the Commission." *Id.*, 14 Ill.Dec., at 259, 372 N.E.2d, at 64.

The Illinois Supreme Court expanded upon its analysis of the state constitutional system of judicial discipline in *People ex rel. Judicial Inquiry Board v. Courts Commission*, 91 Ill.2d 130, 61 Ill.Dec. 789, 435 N.E.2d 486 (1982). In that case, the Inquiry Board sought a writ of mandamus from the Illinois Supreme Court to compel the Courts Commission to reinstate a complaint filed by the Inquiry Board which the Courts Commission had dismissed. The Inquiry Board argued that the Courts Commission had exceeded its state constitutional authority by interpreting the Supreme Court Rules of judicial conduct. The Court completely rejected the Inquiry Board's arguments and held that:

> [t]he Courts Commission is the body with the constitutional responsibility for applying the Rules of Judicial conduct to particular cases. We conclude that its constitutional authority to hear and determine disciplinary cases necessarily includes the power to interpret the rules it applies in deciding cases before it.

*Id.*, 61 Ill.Dec., at 791, 435 N.E.2d, at 488. After reiterating its holding in *Harrod* that the Illinois Constitution vested the Illinois Supreme Court with the responsibility for promulgating standards of judicial conduct, and that therefore, the Courts Commission's decisions must be based on the Illinois Supreme Court Rules, the Court described the constitutional role of the Courts Commission:

> [t]he Commission's function is adjudicative, and interpretation of the legal rule the tribunal is applying is an inherent and inescapable part of the adjudicative process.
>
> *     *     *     *     *     *
>
> The trial court, which, like the Commission, decides cases by finding the facts and applying the law to them, must first read the relevant statute and appellate cases and *based on its understanding of them* determine what, on the facts before it, the law requires.

*People ex rel. Judicial Inquiry Board*, 61 Ill.Dec., at 792, 435 N.E.2d, at 489 (emphasis in original). The Court also addressed the finality of the Courts Commissions' decisions:

> [i]n asking this court to hold that the Commission has misinterpreted Rule 62, the Board is actually asking that we review the correctness of the Commission's application of the rule in a particular decision. This we cannot do. The Constitution mandates that the Commission's decisions shall be final. The finality of the Commission's decisions is an important part of a constitutional arrangement designed to create an independent and autonomous system of judicial discipline that would be both effective and fair.
>
> *     *     *     *     *     *
>
> We point out that this court is not without power to affect the decisions of the Commission and its interpretation of our rules, but according to the constitutional arrangement we do so not by reviewing the Commission's decisions, but by amending the rules which it applies.

*Id.* Based upon its discussion of the state constitutional principles, the Illinois Su-

preme Court concluded that it had improvidently granted leave to file the petition for mandamus and denied the writ.

The provisions of the Illinois Constitution quoted above, coupled with the three cited Illinois Supreme Court decisions construing those provisions, lead this Court to make the following findings:

1) the Inquiry Board is the constitutionally authorized body empowered to investigate, charge, and prosecute Illinois judges accused of misconduct;

2) the Courts Commission is the constitutionally authorized body empowered to adjudicate complaints filed by the Inquiry Board;

3) violations of the Illinois Supreme Court Code of Judicial Conduct must form the basis of any complaint filed with the Courts Commission;

4) the Courts Commission is vested by the Illinois Constitution with the authority to interpret and apply the rules of judicial conduct in the cases before it;

5) decisions of the Courts Commission are final in that no review by the Illinois Supreme Court or lesser Illinois courts is available; and

6) the Illinois Supreme Court is empowered to ensure that the Courts Commission acts only within its state constitutional authority.

These findings lead the Court to further conclude that in the Illinois constitutionally created system of judicial discipline, the Illinois Supreme Court serves in effect as the legislative body in enacting the rules of judicial conduct, the Inquiry Board serves in effect as the executive body charged with investigating and prosecuting violations of the rules of judicial conduct, and the Courts Commission serves in effect as the judicial body charged with interpreting and applying the rules of judicial conduct when it adjudicates the complaints filed by the Inquiry Board. The Court will examine just how the Illinois system of judicial discipline comports with the *Younger* doctrine in subpart B below.

### (2) Their Posture

In paragraph 47 of his Amended Complaint, Justice Pincham alleges that the Inquiry Board "intends to and will file a complaint with the defendant Illinois Courts Commission...." On June 8, 1987, during the hearing on Justice Pincham's request for a Temporary Restraining Order, counsel for the Inquiry Board informed the Court that the Inquiry Board had indeed determined to file a complaint with the Courts Commission. Counsel also pledged that his clients would not actually file the complaint until the matters pending in this Court were resolved.

On January 28, 1988, the Court held a status hearing for the purpose of inquiring of the Inquiry Board's counsel whether the recent change in the membership of the Inquiry Board (five new members had been appointed) had affected the decision to file the complaint. Counsel contacted his clients and reported back to the Court on February 2, 1988, that the newly constituted Inquiry Board had voted to proceed with the action against Justice Pincham and that they were refraining from filing their now drafted complaint only because of the pledge made to this Court at the inception of this case.

Therefore, the posture of the state proceedings is that the Inquiry Board has voted to file a complaint against Justice Pincham with the Courts Commission, the Inquiry Board has prepared a draft complaint, and the only reason the Inquiry Board has refrained from filing its complaint is to honor the pledge made to this Court.

### B. *The Younger Abstention Doctrine*

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the appellee, Harris, was charged in state court with violating the California Criminal Syndicalism Act. While the criminal case was pending in state court, Harris brought a federal action challenging the prosecution and the Act itself on constitutional grounds. A three-judge district court found the Act to be unconstitutional and enjoined the prosecution of Harris. The

Supreme Court reversed, holding that the district court should have abstained from enjoining the state court proceedings.

The Supreme Court spoke of the "longstanding public policy against federal court interference with state court proceedings ...," *id.*, 401 U.S., at 43, 91 S.Ct., at 750, and found that the "normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.*, 401 U.S., at 45, 91 S.Ct., at 751. The vital consideration behind such deference is the notion of comity, defined by the Court as:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.*, 401 U.S., at 44, 91 S.Ct., at 750.

In keeping with this doctrine, the Supreme Court observed that it had long held that federal courts should not interfere with state prosecutions, barring extraordinary circumstances where the danger of irreparable injury is both great and immediate. *Id.*, 401 U.S., at 46, 91 S.Ct., at 751. An accused should first be required to rely upon his defenses in state court, even though it may involve a challenge to the validity of a statute, unless it is clear that this would not provide the accused adequate protection. *Id.*, 401 U.S., at 45, 91 S.Ct., at 745. The Supreme Court held that the possible unconstitutionality of a statute on its face cannot alone justify an injunction against good faith attempts to enforce it and that Harris had failed to demonstrate bad faith, harassment, or some other unusual circumstance that would require federal equitable relief. *Id.*, 401 U.S., at 54, 91 S.Ct., at 755.

Although *Younger* involved the issue of federal court intervention in state criminal prosecutions, the doctrine has since been extended to cover other actions where important state interests are at stake. *See, e.g., Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——; 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (state court civil judgment enforcement proceedings); *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state administrative civil rights proceedings); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state proceedings related to child abuse); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state civil action seeking a return of welfare payments alleged to have been wrongfully received); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed. 482 (1975) (civil nuisance proceeding). *See also Brunken v. Lance*, 807 F.2d 1325 (7th Cir.1986) (child protective custody dispute).

The Supreme Court has also applied the *Younger* abstention doctrine in an attorney disciplinary action. In *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), an attorney was served with a formal statement of charges of violating certain New Jersey Supreme Court disciplinary rules. Instead of filing an answer to the charges, the attorney and three organizations of attorneys filed suit in federal district court contending that the disciplinary rules violated their First Amendment rights and were facially vague and overbroad. The Supreme Court held that abstention was proper. In reaching this conclusion, the Supreme Court broke its analysis into three components:

> *first,* do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.*, 457 U.S., at 432, 102 S.Ct., at 2521 (emphasis in original). These three components also provide the proper framework for the *Younger* analysis in the instant

case. Transposed to the facts of this case, the three questions are:

1) do judicial disciplinary hearings within the constitutionally prescribed jurisdiction of the Inquiry Board and the Courts Commission constitute an ongoing state judicial proceeding;

2) do the state judicial disciplinary proceedings implicate important state interests; and

3) is there an adequate opportunity for Justice Pincham to raise his constitutional challenges in the state disciplinary proceedings.

**(1) Ongoing State Judicial Proceedings**

As discussed above, the Inquiry Board has completed its investigation of Justice Pincham and has voted to file a complaint with the Courts Commission.[9] The Inquiry Board has also prepared a draft complaint which it is prepared to prosecute in the Courts Commission proceedings. Justice Pincham was notified on February 23, 1987, of the pending investigation and was required to appear before the Inquiry Board. (Amended Complaint at ¶¶ 27 and 28). Justice Pincham was given an opportunity to argue before the Inquiry Board

both that his conduct was not violative of the rules of judicial conduct and that his conduct was protected by provisions of the United States Constitution. (*Id.*) Justice Pincham also submitted a lengthy brief to the Inquiry Board setting forth his legal arguments.[10] (Amended Complaint at ¶ 29; Brief attached as an exhibit to the Complaint).

The Inquiry Board proceedings must be viewed as only one part of the two-part state judicial discipline system. The second step, the adjudication before the Courts Commission has not yet begun. Because the Inquiry Board has voted to file its draft complaint with the Courts Commission and has delayed only to keep its pledge to this Court, there is no question that the state proceedings are "ongoing." Indeed, Justice Pincham has not argued otherwise. What Justice Pincham does argue, in essence, is that the Illinois Courts Commission is not a judicial body.

Justice Pincham does not argue that the procedures before the Courts Commission are themselves unfair nor does he argue that the Courts Commission will not consider his constitutional arguments. He ar-

---

**9.** Justice Pincham has repeatedly admitted that a decision by the Inquiry Board *not* to file a complaint with the Courts Commission would have mooted this entire case.

> If the Board has not voted and has no intention to file a complaint against Justice Pincham with the Courts Commission, the instant suit as well as the defendants' abstention motions are moot. If such is the case, the attorneys herein and this court are engaged in useless litigation and Justice Pincham would join in the abstention motion and everyone can return home happily.

(Plaintiff's "Answer" to Motions to Dismiss at 14).

> Defendants offer that three of the Board's eight members terms expire on December 14, 1987 and the term of another Board member expires on December 27, 1987.
>
> \*  \*  \*  \*  \*  \*
>
> Indeed, if the new Board members determine that no complaint should be filed by Defendants against Plaintiff, there is no reason for this Court [to] rule in these matters and both Plaintiff's Complaint and Defendant's Motion to Dismiss may become moot on or about December 27, 1987.

(Plaintiff's Response to Defendants' Motion to Set Matter for Ruling at ¶¶ 8 and 11). This

admission further undercuts Justice Pincham's purported federal voting rights claims by recognizing that the investigation by the Inquiry Board would not in and of itself infringe upon any statutory rights. It was only the decision of the Inquiry Board against him that he finds objectionable, not the process leading up to the decision.

**10.** Although Justice Pincham has had an opportunity to present his constitutional arguments to the Inquiry Board, it is not essential that such an opportunity exist before the *Younger* doctrine becomes applicable. The Supreme Court addressed this point in *Ohio Civil Rights Commission, supra:*

> Dayton also contends that the administrative proceedings do not afford the opportunity to level constitutional challenges against the potential sanctions for the alleged sex discrimination.
>
> \*  \*  \*  \*  \*  \*
>
> In any event, it is sufficient under *Middlesex, supra,* 457 U.S., at 436, 102 S.Ct., at 2523, that constitutional claims may be raised in state court judicial review of the administrative proceeding.

*Ohio Civil Rights Commission v. Dayton Christian Schools,* 106 S.Ct., at 2724 (1987).

gues that this Court cannot abstain in favor of an entity that is, pursuant to the provisions of the Illinois Constitution, independent of the regular state judicial system.

In subpart A above, the Court analyzed the state judicial discipline system. The Court concludes that the Courts Commission is, in fact, an independent state court with a very limited jurisdiction.[11] Its jurisdiction is limited to adjudicating complaints against state judges brought by the Inquiry Board for alleged violations of the Illinois Supreme Court Code of Judicial Conduct. The fact that no superior court will review the decisions of the Courts Commission does not serve to invalidate the system. Under the New Jersey attorney disciplinary system analyzed in *Middlesex*, only one court—the New Jersey Supreme Court—would hear and decide constitutional arguments. *Middlesex*, 457 U.S., at 427, n. 4, 102 S.Ct., at 2519, n. 4.

None of the parties has cited any case or other authority that discusses the significance of the independence of the Courts Commission from the remainder of the state judicial system. Indeed, it is not clear that the parties have even recognized the existence of this issue. Nonetheless, this is the issue that confronts the Court. The Court holds that the principles of comity and federalism first enunciated in *Younger* require this Court to abstain in favor of an independent state court, established by the Illinois Constitution for the express purpose of adjudicating judicial discipline cases, so long as the other requirements for abstention are met. The fact that the state tribunal is independent of the other parts of the state court system is no impediment to the application of the *Younger* doctrine.

### (2) State Interests

Under this component of the *Younger* analysis, the Court must determine whether the state proceedings involve an important state interest. The *Middlesex* court found that the State of New Jersey had "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex*, 457 U.S., at 434, 102 S.Ct., at 2522. *See also Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975); *Sekerez v. Supreme Court of Indiana*, 685 F.2d 202, 205 (7th Cir.1982).

A state's interest in assuring the integrity and professional conduct of its judiciary is certainly at least as important as its interest in assuring the professional conduct of the attorneys it licenses. *Coruzzi v. State of New Jersey*, 705 F.2d 688, 691 (3rd Cir.1983). Although state disciplinary proceedings must protect the constitutional rights of the individual subject to discipline, "it is equally clear that a state's interest in regulating its judiciary is so compelling that a federal district court should not intervene, unless one of the *Younger* exceptions applies." *Dostert v. Neely*, 498 F.Supp. 1144, 1153 (S.D.W.Va.1980). This Court agrees that Illinois' interest in maintaining the integrity of its judiciary is a vital and compelling one.

### (3) Opportunity to Raise Constitutional Challenges

With regard to this component of the *Younger* analysis, Justice Pincham has the burden of showing that he will not have the opportunity to raise his constitutional

---

11. The Rules of Procedure of the Courts Commission, 1 Ill.Cts.Com. pp. XXIV–XXVIII (1980) (effective July 17, 1972), afford the procedural safeguards that are the hallmarks of American courts. Formal proceedings are commenced by the filing of a complaint which "shall specify in plain and concise language the charges against the judge and the allegations of fact upon which such charges are based ..." (Rule 3). The respondent judge has twenty-one days to file responsive pleadings to the complaint. (Rule 3). The respondent judge is entitled to a hearing. (Rule 9). Except where inappropriate, the pro-visions of the Illinois Code of Civil Procedure and civil rules of evidence shall govern. (Rule 11). The allegations in the complaint must be proven by clear and convincing evidence. (Rule 11). The respondent judge may obtain compulsory process for the attendance of witness and may cross-examine any witness against him. (Rules 15 and 23). The hearing is public. (Rule 12). A verbatim transcript of the proceedings is kept. (Rule 22). And, a written order is preserved at the conclusion of the hearing. (Rule 21).

claims before the Courts Commission. *Pennzoil Co. v. Texaco, Inc.,* — U.S. —, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). As noted above in subpart B.(1), Justice Pincham has never argued that the Courts Commission will not hear and carefully consider his constitutional arguments. In addition, the Court notes that the members of the Courts Commission, state court judges all, have sworn to uphold the rights guaranteed by the United States Constitution. The Court concludes based upon its review of the Rules of Procedure of the Courts Commission as well as based upon the Court's findings with regard to the Courts Commission's state constitutional authority, that the Courts Commission will hear and resolve Justice Pincham's constitutional claims.

Because all three components of the *Younger* abstention analysis support the defendants' motions asking this Court to abstain in favor of the state proceedings, this Court must abstain unless one of the exceptions to the *Younger* doctrine applies.

*C. Exceptions to the Younger Doctrine*

*Middlesex* and *Younger* hold that, even when the three-part analysis is met, certain exceptional circumstances may render abstention unwarranted. Abstention is not appropriate if: (1) the disciplinary proceedings were brought in bad faith or to harass the plaintiff; or (2) the state rules are "flagrantly and patently" unconstitutional no matter how they may be applied. *Middlesex,* 457 U.S., at 437, 102 S.Ct., at 2524; *Younger,* 401 U.S., at 53–54, 91 S.Ct., at 755. Justice Pincham argues that both exceptions apply to the instant case.

The bad faith exception is a narrow one and is to be granted parsimoniously. *Hensler v. District Four Grievance Committee,* 790 F.2d 390, 392 (5th Cir.1986). A plaintiff alleging that a state proceeding has been initiated against him in bad faith must allege specific facts to support an inference of bad faith. More than a mere allegation or a 'conclusory' finding is required to bring a case within the *Younger* harassment exception. Specific evidence must demonstrate that state prosecution

" 'was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights.' " *Collins v. County of Kendall, Ill.,* 807 F.2d 95, 98 (7th Cir.1986) *cert. denied* — U.S. —, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) (quoting *Wilson v. Thompson,* 593 F.2d 1375, 1383 (5th Cir.1979)). *See also Grandco Corp. v. Rochford,* 536 F.2d 197, 203 (7th Cir.1976).

In affirming the district court's dismissal of the complaint in *Collins,* the Seventh Circuit held that the complaint did not allege facts demonstrating bad faith prosecution. In reaching this conclusion, the Seventh Circuit stated that the complaint did not show that state officials were " 'using or threatening to use prosecutions, *regardless of their outcome,* as instrumentalities to suppress speech.' " *Collins,* 807 F.2d, at 101 (quoting *Sheridan v. Garrison,* 415 F.2d 699, 706 (5th Cir.1969) (emphasis in original). Nor, the court continued, had the complainants showed that a statute was enforced against them merely to discourage the exercise of protected rights with no expectation of convictions. *Id.*

Justice Pincham has failed to allege that the Inquiry Board and Courts Commission have no expectation of taking action on the charges against him. Furthermore, he has failed to allege or argue that the sole reason for the initiation of the proceedings was to prevent him from exercising his protected rights. *Collins,* 807 F.2d, at 101. In his complaint, Justice Pincham merely alleges that the proceedings constitute "selective prosecution" and makes reference to the alleged failure of the Inquiry Board and Courts Commission to take action against certain other judges in connection with alleged political activity. (Amended Complaint at ¶ 59). However, the instances of alleged political activity described by Justice Pincham can all be distinguished from the instant action in that none of these allegations involve public speaking. The Court finds that Justice Pincham's allegations are sketchy at best and clearly insufficient to make the requisite showing of bad faith or harassment.

The final issue is whether the Illinois Supreme Court Rules at issue[12] are " 'flagrantly and patently' " unconstitutional. *Middlesex,* 457 U.S., at 437, 102 S.Ct., at 2524 (citing *Younger,* 401 U.S., at 53, 91 S.Ct., at 755).

The Court finds that the Rules at issue cannot be said to be " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph,' " no matter how they are applied and against whomever they are applied. *Younger,* 401 U.S., at 53–54, 91 S.Ct., at 755 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). As the Supreme Court has stated, "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it...." *Younger,* 401 U.S., at 54, 91 S.Ct., at 755.

In addition, Justice Pincham has conceded that the rules are susceptible to a constitutional construction. Justice Pincham and his attorneys appeared before the Inquiry Board and urged that the rules "did not prohibit plaintiff's constitutionally protected January 31, 1987 Operation P.U.S.H. Community Forum Black History speech...." (Amended Complaint at ¶ 28). Moreover, in his response to the defendants' motions to dismiss, Justice Pincham notes that the Rules "have not yet been construed, interpreted or applied" by the Courts Commission. (Plaintiff's "Answer" at 5). Therefore, the Court finds that there is no basis for concluding that the rules are totally incapable of a construction that does not violate constitutional rights.

Because, as noted in subpart V. B, the three components of the *Younger* analysis require abstention, and because no exception to *Younger* applies, this Court must abstain in favor of the state proceedings.

## D. Ripeness

Both the Inquiry Board and the Courts Commission argue that this case is not ripe for adjudication. "[A] reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy." *Ohio Civil Rights Commission,* 106 S.Ct., at 2722, n. 1 (citing *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). In the instant case, the Inquiry Board has completed its investigatory function, has voted to file a complaint against Justice Pincham and has prepared a draft complaint. All that prevents the Inquiry Board from filing the complaint with the Courts Commission is the pledge that counsel for the Inquiry Board made to this Court to forbear from further action until the instant case was resolved. The Court holds in accordance with the principles set out in *Steffel v. Thompson* that this case is ripe for adjudication.

## VI. CONCLUSION

For the reasons set forth above, the plaintiff's motion for impanelment of a three-judge court is denied. The plaintiff's motion to further amend his Amended Complaint by adding a federal voting rights claim in a second count is denied. The defendants' motions to dismiss this action under the abstention doctrine first articulated by the United States Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), are granted. The Clerk is directed to enter

---

12. The Rules challenged in the complaint are:

Rule 61 "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective...."

Rule 62(A): "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Rule 67(A)(2): "A judge may not, except when a candidate for office or retention, participate in political campaigns or activities, or make political contributions."

Rule 67(A)(4): "A judge should not engage in any other political activity except on behalf of measures to improve the law, the legal system or the administration of justice."

## 1326

■■■■■■■■■■■■■■

judgment in favor of all the defendants and against the plaintiff.